[Civ. No. 16202.   Second Dist., Div. Three.   Nov. 3, 1948.]

B. B. NELSON, Appellant, v. GEORGE R. REILLY et al., Respondents.

Leslie S. Bowden and Frank Mergenthaler for Appellant.

Fred N. Howser, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondents.

SHINN, P. J.—Appellant, B. B. Nelson, filed his petition for a writ of mandate directed to the members of the State Board of Equalization, commanding them to rescind and set aside a certain regulation of the board, effective March 1, 1947, known as Amended Rule 99 (4 Cal. Adm. Code 99), which rule requires those licensed to sell whiskey or domestic brandy to enter into fair trade contracts for which provision is made by section 55.5 of the Alcoholic Beverage Control Act. (Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796.) He alleged that he is duly licensed under the laws of the State of California to engage in the business of retailing intoxicating liquors and is so engaged, and that the said regulation · is unreasonable, contrary to law and will, if enforced, cause him irreparable damage in that it will deprive him of the right to fix or establish the retail selling price of his merchandise. The general demurrer of the respondents to the petition was sustained without leave to amend and the proceeding was dismissed by judgment rendered June 23, 1947. Petitioner appeals.

Appellant's attack upon the rule is based upon a state of the law which no longer exists. A premise from which his argument proceeds is that at the time the regulation was promulgated by the board, fair trade contracts of the type described in the rule were declared by section 55.5 of the control act to be lawful but were permissible only, whereas, by the rule they are made compulsory. Appellant contends that no

authority had been or could be delegated to the board by the Legislature to enact regulations having the force of law which would require retail licensees to enter into and comply with fair trade contracts. The theory appears to be that such a regulation would not be within the policy and purpose of the control act and that the Legislature alone had the power to require licensees to operate under fair trade contracts.

Section 55.5 declares that no contract relating to the sale or resale of any alcoholic beverage which bears the trademark, brand, or name of the producer or owner, and which is in fair and open competition with alcoholic beverages of the same general class produced by others, shall be deemed in violation of any law of the state by reason of provisions therein (1) that the buyer will not resell such alcoholic beverage except at the price stipulated by the vendor; (2) that the producer or vendee of the alcoholic beverage require, on the sale thereof to another, that such purchaser agree that he will not, in turn, resell except at the price stipulated by such producer or vendee. Further provision is made respecting conditions under which alcoholic beverages may be resold without reference to the agreement, but such provisions are not here involved.

Said amended rule 99 requires every manufacturer, manufacturer's agent, wholesaler and rectifier, to file with the board copies of his fair trade contracts stating, as to whiskey and domestic brandy, the containers of which bear labels stating the brand or name of the owner or producer, (1) the minimum resale price to consumers; (2) the minimum retail price that any purchaser from the vendee shall charge at the retail to consumers; (3) any discounts offered. Sales are required to be made at not less than the stipulated prices. Other provisions of the rule are incidental to the foregoing provisions.

In 1947 (Stats. 1947, p. 1698) a new section numbered 55.6 was added to the control act, reading, in part, as follows: "All distilled spirits sold at retail shall be, and any other alcoholic beverage may be, sold pursuant to a contract executed under the provisions of Section 55.5 of this act. No licensee shall violate any of the provisions of said contract.

"Every distilled spirits manufacturer, brandy manufacturer, rectifier and wholesaler shall file and maintain with the board a price list showing the prices at which distilled spirits are sold to retailers by such licensee. Sales of distilled spirits to retailers by each distilled spirits manufacturer,

brandy manufacturer, rectifier and wholesaler shall be made in compliance with the price list of such licensee on file with the board.

"The board may adopt such rules and regulations as it may determine to be necessary for the administration of this section."

Although prior to the enactment of section .55.6 appellant was conducting his business under fair trade contracts because of and pursuant to the rule in question, his duty now is derived from the statute. The fact that the rule imposes the same duty presents no question as to the powers of the board to adopt the rule. The objection that at the time his petition was filed it was not obligatory under the control act to operate under fair trade contracts raises only a moot question. Other provisions of the rule with relation to the statement of minimum resale prices to consumers, the prices to be fixed for resale to consumers, discounts offered, and the obtaining of permission for "close out" sales are not questioned by appellant and are obviously valid. They set up reasonable means for administration of the act and were properly adopted under the powers of the board to make rules and regulations such as it may deem necessary for that purpose.

Although the principal question argued by appellant has become moot, and the appeal would be subject to dismissal on that ground, there is an additional point raised by him that should be disposed of. He argues that if rule 99 was otherwise valid, as the law stood prior to the enactment of section 55.6, the requirement for fair trade contracts would be invalid for the reason that it would be in conflict with the Cartwright Anti-Trust Law of 1907. (Stats. 1907, p. 984; 3 Deering's Gen. Laws, Act 8702.) It is claimed that price fixing agreements, such as those authorized by the control act, would be illegal under the Cartwright Law. We need not consider that question. If there is an irreconcilable conflict between the earlier legislation and the provisions of the control act which legalize fair trade contracts in the liquor industry, the later legislation must control.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.