[Civ. No. 15505.   First Dist., Div. One.   Aug. 18, 1953.]

HERTZ DRIV-UR-SELF STATIONS, INC. (a Corporation), Respondent, v. SCHENLEY DISTILLERIES CORPORATION (a Corporation), Appellant.

Bronson, Bronson & McKinnon for Appellant.

J. Joseph Sullivan for Respondent.

BRAY, J.—From a judgment in favor of plaintiff in the sum of $11,379.80, defendant appeals.

### QUESTIONS PRESENTED

1. By the 1945 and subsequent schedules, was the requirement of purchase by defendant abrogated?

2. Was there an anticipatory breach of the contract by plaintiff?

### FACTS

In 1941 the parties entered into a written agreement by which plaintiff leased to defendant over a period of years, trucks, tractors and trailers ''described in Schedule A, attached hereto, together with any additional Schedule A's attached hereto, which are made a part hereof by reference thereto the same as if rewritten at length herein . . . Customer agrees to pay to Hertz the rental stipulated herein, and upon the terms and conditions in the said Schedule A, to-

gether with any other Schedule A's attached hereto, and upon the additional terms and conditions in this instrument contained.'' Schedules were to be added from time to time. Schedule A was to provide the fixed rental charge plus a mileage charge. Expressly recognizing that the cost of gasoline, license fees or taxes might fluctuate during the life of the agreement, it provided that if the average cost thereof during any month decreased or increased 20 per cent or more from the present cost, the amount of such increase would be charged defendant as increased rental while the amount of decrease would be credited defendant. Either party on notice could cancel the agreement on any anniversary date. If defendant cancelled then it agreed to purchase the vehicles then covered by the agreement upon the basis set forth. If plaintiff cancelled, defendant had the right to purchase.

The first Schedule A, executed on the same date as the agreement, listed only one vehicle and provided: ''In the event customer shall elect to cancel this agreement *with respect to the above listed vehicle,* the customer shall not be required, but shall have the right to purchase the vehicle *listed above* . . .'' (Emphasis added.) February 2, 1943, a new schedule was added ''in addition to'' the first, and referred to two vehicles different from the one in the first. February 6, 1945, there was added the schedule upon which defendant relies. It provided that it ''shall supersede any previous Schedule A'' and described four vehicles (three of which were those described in the first two schedules) and provided: *''With respect to the above listed vehicles''* that, in the event of cancellation as provided in the agreement, ''Customer shall not have the right to purchase *said vehicles,* except by consent of Hertz . . .'' (Emphasis added.) March 18, 1946, another Schedule A referring to two vehicles (one of which was included in the previous schedule) was signed ''in addition to'' any previous schedule. October 23, 1946, with the same notation, another schedule was signed listing an additional vehicle. January 13, 1947, appears another schedule also ''in addition to any previous Schedule.'' This lists six vehicles, none of which appear on any previous schedule. It is these six vehicles plus one listed in the schedule of March, 1946, which defendant was still using and which the court found defendant was required to buy. All schedules provided that insurance premiums and gasoline prices shall be as stated in the schedule rather than as stated in the contract.

In August, 1948, Jordan, plaintiff's San Francisco man-

ager, presented defendant with a new Schedule A to become effective September 1, 1948. This schedule added two trucks, increased the fixed weekly rental charge and the mileage rate for the six vehicles listed in the previous schedule. It also increased the "gasoline price including tax." Thereafter, defendant cancelled the contract and refused to purchase. The circumstances upon which defendant based its contention of an anticipatory breach of the contract by plaintiff will be discussed later.

### 1. *Effect of Schedules*

The court found that the purchase clause of the agreement was not modified by the schedule of February 6, 1945, as to the vehicles listed in the schedules of March 18, 1946, and January 13, 1947.

The first schedule merely purports to modify the purchase clause of the contract as to "the above listed vehicle." While the next schedule is "in addition to" the first, it does not include the vehicles therein listed within that modification. Again, the modification in the 1945 schedule which supercedes the preceding schedules applies "to the above listed vehicles." The three following "in addition" schedules make no effort to include the additional vehicles in this modification. The contract requires purchase at cancellation of "the vehicles then covered by this agreement." None of the vehicles at this time was included in "the above listed vehicles" in the exception to the contract provided by the 1945 schedule. Defendant contends that by an *additional* schedule, as distinguished from a *superseding* schedule, the vehicles therein are made subject to the release provision of the 1945 schedule. But the release provision is explicit in its terms, referring to the "above listed vehicles." Moreover, the later schedules do not provide that the *vehicles* are to be added to those in the preceeding schedule but that the particular schedule is to be added to any previous schedule. Thus the most reasonable interpretation is that it applies only to those vehicles and that had the parties intended it to apply to the additional vehicles in the later schedules they would have said so in those schedules. Nor is the reasonableness of this interpretation affected by the facts that the release caluses in the 1941 and 1945 schedules are typewritten while the purchase clause in the agreement is printed, and that since plaintiff prepared the contract, ambiguities, if any exist, are to be construed most strongly against it under the rule of *Reid* v. *Johnson,*

85 Cal.App.2d 112 [192 P.2d 106]. The agreement provides that the parties are to be governed by the provisions of the main agreement and those of the schedules thereafter attached. Thus, they are to be construed together. (*Valley Const. Co. v. City of Calistoga,* 72 Cal.App.2d 839 [165 P.2d 521].) In so doing there is no repugnancy between the main agreement and the schedule, nor is their language unclear. Taken as a whole they provide simply and clearly that on cancellation defendant is required to purchase those vehicles then in use except those listed in the 1945 schedule.

## 2. *Anticipatory Breach*

■ Defendant contends that plaintiff demanded that defendant either sign the proposed 1948 schedule which it says increased rates higher than required by the agreement, or plaintiff would cancel, and that thereby plaintiff committed an anticipatory breach. Horowitz, defendant's assistant traffic manager, testified that Phillips, plaintiff's vice president, told him that plaintiff would have to increase its rates on mileage and fixed rental or place its equipment where they could get better revenue for it. Phillips denied giving this ultimatum, stating that he was merely endeavoring to negotiate for increases, explaining to Horowitz that costs had gone up and defendant was giving the vehicles but limited operation. Phillips further explained that defendant had not operated for about three and one-half months, due to the warehouse strike, that Phillips had gone over the increased expense items with other customers and they, without a single exception, had granted plaintiff reasonable increases in rates. Thereafter, Jordan, plaintiff's San Francisco manager, presented Horowitz with the proposed 1948 schedule and told him that if plaintiff could not get these rates it would have to cancel the contract. Shortly thereafter Phillips wrote Horowitz stating that he had received a report from Jordan concerning the conference which Jordan had just had with him in which Jordan stated that Horowitz did not feel justified in approving the increase in rates in the submitted schedule. Phillips then stated that he was certain Horowitz could appreciate that operating expenses had increased considerably and in about the same proportion as the new schedule proposed; that other customers have realized that such increases do prevail and have accordingly signed new schedules. "We feel certain that you and your executives want to be fair in this matter, and I will ask that you please reconsider this whole situation and approve the schedules. . . ." He

then refers to a fire partially destroying two of the vehicles being operated by defendant, and the fact that plaintiff was awaiting insurance adjustment and in the meantime was not billing defendant for those vehicles. "I will ask that you please review this San Francisco operation with your management, and get them to approve these increases in rates, so that we will be able to get ourselves 'out of the red.' " Horowitz made written reply to this letter, stating that when Jordan showed him the new schedule he told Jordan that he did not believe defendant would accept the higher rates and that he would be glad to release the equipment if Jordan could place it. One tractor and trailer could be released immediately and the other tractor and two trailers could be released in about two months. He referred Jordan to a concern which might be able to use the equipment. To date he had not heard from Jordan as to whether he was able to contact the concern mentioned and whether he was not able to place the equipment by the anniversary date. "I would like to advise at this time that we wish to cancel our contract as of February 1, 1948, in accordance with Clause 18" of the agreement. This is the clause which provides for purchase if the customer cancels. Plaintiff thereupon accepted the cancellation and sought to enforce the purchase provision, defendant having refused to purchase any vehicles. The court found that defendant, acting in pursuance of its rights under Clause 18, by this letter notified plaintiff of its election to cancel, that at that time there were seven vehicles covered by the agreement and the 1946 and 1947 schedules, and that by such cancellation defendant became· obligated to purchase said vehicles; further that plaintiff had fully performed and had in nowise breached or repudiated the agreement; that it is not true that a breach or repudiation occurred "when Plaintiff notified defendant that effective September 1, 1948, the rates for vehicles in question would be increased and that it is not true that Plaintiff in submitting to the Defendant a new Schedule 'A' for such proposed increased rates, stating to Defendant that Plaintiff would not continue to perform under said agreement beyond January 31, 1949, unless same was accepted by Defendant in anywise repudiated or breached said agreement."

The court found that it is not true that the proposed schedule included such increased rates as were in excess of the increased cost to plaintiff as provided in Clause 22 of the agreement. This finding is not supported by the evidence.

The agreement contemplated that in the event of increase in gasoline, license fees or taxes, of more than 20 per cent from the cost at the date of the contract, such increase could be charged to defendant as additional rental. The rates in the proposed schedule increased ''gasoline price including tax'' far in excess of the actual increased cost.* Moreover, fixed rental charge and mileage rate were also increased. Thus, the proposed rates were in excess of what defendant could have been required to accept. This fact, however, would be important only if the schedule were submitted on the basis that unless accepted plaintiff would decline to perform its contract. The schedule was proposed to take effect September 1, 1948. The anniversary date of the contract was November 5. The evidence fails to disclose any intention on the part of plaintiff not to perform the contract at least until the anniversary date, at which time it had the right, under the contract, to cancel, whether defendant accepted the new schedule or not. Thus the finding ''that it is not true that Plaintiff in submitting to the Defendant a new Schedule 'A' for such proposed increased rates, stating to Defendant that Plaintiff would not continue to perform under said agreement beyond January 31, 1949, unless same was accepted by Defendant in anywise repudiated or breached said agreement'' is a correct finding. It constituted neither a breach, because it contemplated performance under the contract to the anniversary date, nor a cancellation, because such cancellation under the contract could only be accomplished by notice in writing, and there was none. Even Jordan's statement could not constitute a cancellation. Clause 18 of the agreement specifically requires a written notice of cancellation, and the Phillips letter did not announce a cancellation nor did it contain anything resembling a breach of contract. ■ Anticipatory breach must appear only with the clearest terms of repudiation of the obligation of the contract. (*Atkinson* v. *District Bond Co.,* 5 Cal.App.2d 738 [43 P.2d 867]; *Gold Min. & Water Co.* v. *Swinerton,* 23 Cal.2d 19 [142 P.2d 22]; 4 Cal.Jur.Supp.

---

*It should be noted that in all schedules there was a statement that the insurance premiums and gasoline prices may have been substantially changed from those stated in Clause 22 of the agreement and that the parties mutually agreed that, insofar as the motor vehicle equipment described in the particular schedule is concerned, the insurance premiums and gasoline prices shall be as stated in the respective schedule, instead of as stated in Clause 22. Apparently these increases were without regard to whether the basic cost increased 20 per cent or more as mentioned in Clause 22.

197.) Even though plaintiff might have terminated the contract on the anniversary date, that fact did not authorize defendant to terminate it without purchasing. It was defendant, not plaintiff, who cancelled. One cannot escape the obligations of a contract merely because the other party might exercise his right to terminate the contract. Interestingly enough, in its letter of cancellation, defendant nowhere indicates that plaintiff was offering Schedule A "or else," nor does defendant suggest that it is cancelling because of any claimed anticipatory breach by plaintiff. The letter states that the cancellation is "in accordance with Clause 18" which expressly provides that if defendant cancels it must purchase the equipment.

The form of the court's finding above mentioned is peculiar. If it is a direct finding that plaintiff so stated to defendant, still it does not help defendant. Plaintiff had the right to cancel at the anniversary date with or without reason, provided it gave defendant 30 days notice thereof. The fact that it intended to exercise its legal right to cancel unless defendant accepted the new rates, if it so intended, would in no wise justify defendant in cancelling. All defendant had to do was to refuse to accept the new rates and then upon cancellation by plaintiff, if it did so, defendant would have been under no obligation to purchase.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1953. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.