[Civ. No. 20084.   First Dist., Div. One.   Dec. 27, 1962.]

JACK E. EARLY, Plaintiff and Appellant, v. SANTA CLARA BROADCASTING COMPANY, INC., Defendant and Respondent.

Marvin J. Colangelo for Plaintiff and Appellant.

Timothy A. O'Connor and Arthur W. Walenta, Jr., for Defendant and Respondent.

BRAY, P. J.—Plaintiff appeals from a judgment denying him relief on his complaint and cross-complaint and granting defendant $1,881.78 on its cross-complaint.

### QUESTIONS PRESENTED

1. Was there a cancellation of the contract by plaintiff prior to the bringing of this action; (a) did plaintiff have the right to cancel; (b) did he actually cancel?
2. Damages.
3. Should a permanent injunction have been granted?
4. Findings.

### RECORD

Plaintiff operates an advertising business known as The Early Company. Defendant operated radio station KSJO in San Jose. On June 10, 1959, plaintiff's account executive, Bohannan, entered into a contract on behalf of plaintiff with defendant, under which defendant was to broadcast 1,190 radio spot announcements, Park Westwood commercials, during a 52-week period, backdated to commence on April 2, 1959, and to terminate March 31, 1960. There were to be 20 spot announcements per week, plus 150 bonus spots, at a total contract price of $3,120. There was no provision for cancellation in the contract, although Bohannan testified that Haist, the station representative with whom Bohannan dealt, had told him prior to the entry of the contract that the contract could be unilaterally cancelled. Both Haist and the station manager, Paul, denied this. In the last week of July 1959, by mutual agreement, the number of announcements

was to be cut from 20 to 5 a week for the month of August, after which the original schedule was to be resumed, and the omitted announcements made up.

Bohannan testified that on August 6, 1959, he contacted Haist and told him to cancel the broadcasts completely since the advertiser no longer desired the announcements to continue. The record is replete with conflicting testimony on this point. The court found that no such statement was made.

In September, the previous schedule was resumed. Early in October defendant sent plaintiff an invoice for the September announcements. Bohannan testified that he returned the invoice with a note to the effect, ''What in the world is this all about?'' Also early in October plaintiff received a statement from defendant dated October 1, 1959, showing a balance due for August. Plaintiff wrote a letter to defendant stating that he would remit the balance on receipt of invoices.

On November 5, Bohannan received invoices for August, September and October. He then called Haist and claimed that the contract had been cancelled. Haist answered that KSJO was relying on the contract pursuant to Paul's instructions. Bohannan then said that he would write a letter about the matter. The letter was received December 1. It stated that plaintiff no longer wanted the commercials run, that the contract had been cancelled, and that defendant did not have and had not had ''since our cancellation last July'' any authorization to run the commercials. Return of all transcribed commercials was demanded. Defendant continued to run the commercials, informing Bohannan by letter that nothing in Bohannan's letter nullified plaintiff's obligation to pay for the advertising ordered. A meeting to reach an ''amicable settlement'' was suggested.

In December Haist and Bohannan met, and in January 1960, Paul and Bohannan met. Bohannan insisted that the contract had been cancelled. No settlement was reached. Defendant continued to broadcast the commercials until January 25, when plaintiff filed this action asking for an injunction to restrain defendant from broadcasting the commercials and for damages. A temporary restraining order was issued. Defendant cross-complained for damages for alleged breach of contract. Plaintiff answered the cross-complaint, and, in turn, cross-complained for declaratory relief to determine the rights and duties of the parties under the contract, the amount of compensatory damages due plaintiff because of defendant's refusal to abide by the alleged

cancellation of the contract, and because of the necessity of filing the suit, and for exemplary damages.

The court decreed that plaintiff recover nothing, and that defendant on its cross-complaint recover $1,881.78. The court also denied a permanent injunction.

1. *Cancellation.* (a) Right to Cancel.

The court found against plaintiff on the question of whether Haist told Bohannan that the contract could be cancelled unilaterally. ■ Nevertheless, it is settled in California that a party to an executory contract has the power to stop performance of a contract on giving notice to that effect, being responsible in damages, however, for such cancellation. Upon receipt of notice the other party cannot continue performance and recover damages for full performance.

*Richardson* v. *Davis* (1931) 116 Cal.App. 388 [2 P.2d 860], is directly in point. There, the defendant agreed to pay the plaintff $65 per month for two years for showing advertising films in certain railroad passenger terminals. After a few months' performance the defendant sent written notice to the plaintiff that the contract was terminated. The plaintiff, however, continued to run the films for the full two-year period, and then sued for the contract price. In reversing a judgment of the trial court in the plaintiff's favor the appellate court held that the contract had been anticipatorily breached by the notice given the plaintiff by the defendant and that in such case only damages for breach were recoverable, and not damages for services rendered after the repudiation. (See also *Bomberger* v. *McKelvey* (1950) 35 Cal.2d 607, 613-614 [220 P.2d 729].)

(b) Was there cancellation?

■ In order that the foregoing rule may apply it must appear that the repudiation be clear, positive and unequivocal. (See *Gold Min. & Water Co.* v. *Swinerton* (1943) 23 Cal.2d 19, 28-29 [142 P.2d 22]; *Hertz Driv-Ur-Self Stations, Inc.* v. *Schenley Distilleries Corp.* (1953) 119 Cal.App.2d 754, 760 [260 P.2d 93].) A mere declaration not to be bound will not amount to a breach. (See *Atkinson* v. *District Bond Co.* (1935) 5 Cal.App.2d 738, 743 [43 P.2d 867]; *California Canning Peach Growers* v. *Harris* (1928) 91 Cal.App. 654 [267 P. 572].)

■ The court found on conflicting evidence that Bohannan did not cancel the contract. We are bound by that finding. It was not until the letter received December 1 that

there was a clear attempt to cancel the contract. Although on the face of the letter it appeared to be a complete cancellation, nevertheless the action of the parties indicates that it was not so regarded by either, and its effect was nullified by the willingness of plaintiff to enter into negotiations and the fact that such negotiations actually took place (the Bohannan-Haist and Bohannan-Paul meetings). There is conflict in the testimony regarding what took place at these meetings so that the court's finding that the contract was not anticipatorily breached until the action for injunction was actually filed is supported.

2. *Damages*

Apparently the court allowed as damages the amount to which defendant would have been entitled had the contract been completed. Plaintiff does not attack this award as being excessive, nor can it be said that it bears no relation to the damages actually incurred. As to whether the required number of announcements was made there is substantial evidence to support the court's finding that defendant had performed its part of the contract. ▮▮ As to damages sought by plaintiff under his cross-complaint claiming that the use of the same recording for longer than two months resulted in a monotonous and poorly sounding announcement, the court, as hereinbefore pointed out, found that there was no cancellation of the contract until the filing of this suit, whereupon the broadcasting stopped. Hence there could be no damage.

▮▮ The court's determination that plaintiff did not cancel the contract until the filing of this action precludes plaintiff from recovering any damages for any period prior thereto. Likewise, the court's finding that plaintiff breached the contract precludes him from recovery of damages for any period whatsoever. ▮▮ As plaintiff was not entitled to any compensatory damages, there could be no recovery of punitive damages. (Civ. Code, § 3294; *Foster* v. *Keating* (1953) 120 Cal.App.2d 435, 455 [261 P.2d 529].) Therefore we need not consider the question of damages further.

3. *Permanent Injunction.*

▮▮ Plaintiff complains that the permanent injunction prayed for was not granted. It will be noted that a preliminary injunction was granted February 9, 1960, and defendant immediately ceased broadcasting the announcements, and they have not been resumed. The contract expired of its own terms March 31, 1960. The case was tried October 4, 1960. At that

time and obviously at the time of judgment thereafter there was nothing to enjoin. In such event there was no legal issue as to whether the injunction should become permanent and the court was under no obligation to act further. (See *Guardianship of Thomas* (1954) 125 Cal.App.2d 135, 137 [269 P.2d 947].) In *Paoli* v. *California & Hawaiian Sugar etc. Corp.* (1956) 140 Cal.App.2d 854 [296 P.2d 31], the plaintiffs sought damages and injunctive relief, alleging breach of a collective bargaining agreement, and of an arbitration award rendered thereunder. The trial court denied damages but granted injunctive relief. The judgment also declared that defendant had breached the contract. The court held that that portion of the judgment was moot in view of the finding that the plaintiffs had suffered no damages and reversed that portion of the judgment. Quoting from 1 Corpus Juris Secundum, page 1017, section 17 (d), the court stated: " '. . . although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character it becomes a moot case or question which will not be considered by the court. . . .' " (P. 857.) (See also *Ratterree Land Co.* v. *Hutton* (1935) 4 Cal.2d 100 [47 P.2d 732].)

Alternatively, the denial of a permanent injunction can be said to have been proper in the instant case due to the change of conditions between the time the complaint was filed and the time of judgment. ██ "A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future." (*Mallon* v. *City of Long Beach* (1958) 164 Cal.App.2d 178, 190 [330 P.2d 423].) ██ "If, therefore, at the time of the order of judgment, in the absence of special circumstances . . . there is no reasonable probability that past acts complained of will recur, injunctive relief will be denied." (*Ibid.*) (See also *Thome* v. *Honcut Dredging Co.* (1941) 43 Cal.App.2d 737, 741 [111 P.2d 368].) There is no evidence that defendant intended to continue broadcasting the announcements. Therefore, the permanent injunction was properly denied.

### 4. *Findings.*

██ As to plaintiff's contention that the court should have made a finding as to whether an injunction restraining defendant from continuing the broadcasts should issue, the

court found the facts that plaintiff had breached the contract and that defendant had not, and that the contract had terminated. No further finding was necessary. In view of the fact that plaintiff breached the contract the court could not have awarded plaintiff damages, and therefore could not make a finding granting plaintiff damages.

Plaintiff contends that a number of findings of fact are not supported by the evidence. Some of the findings have hereinbefore been discussed. His objections to the findings are general in nature, that is, plaintiff merely states that the finding or portion thereof is not supported by the evidence, without citation to the record or statement of in what way the finding lacks support. Plaintiff also maintains that certain of the findings should have been more specific, without indicating in what way they lack specificity. For example, "Paragraph XV of the Findings is in error, and a specific finding should have been made to reflect the actual facts adduced at the trial." ▋ This court is not required to search the record to determine if there is no evidence to support a questioned finding. It is the duty of an appellant to show in his brief wherein the evidence does not sustain a questioned finding.

▋ Applicable here is the following quotation from *Estate of Palmer* (1956) 145 Cal.App.2d 428, 431 [302 P.2d 629], appearing in *Grand* v. *Griesinger* (1958) 160 Cal.App.2d 397, 403 [325 P.2d 475] : " 'A claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents. Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents. An appellant is not permitted to evade or shift his responsibility in this manner."

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.