[S. F. Nos. 21394, 21816.   In Bank.   Dec. 3, 1964.]

CHARLES PAUL, as Director of the Department of Agriculture, Plaintiff and Appellant, v. MILK DEPOTS, INC., Defendant and Respondent.

(Two Cases)

Stanley Mosk and Thomas C. Lynch, Attorneys General, and John Fourt, Deputy Attorney General, for Plaintiff and Appellant.

Lawrence Edwards for Defendant and Respondent.

SCHAUER, J.*—These are two appeals arising out of different stages of the same superior court action. In the main appeal (S.F. No. 21394) the Director of the Department of Agriculture of the State of California (hereinafter called the director) seeks to overturn an adverse judgment rendered in an action (1) to enjoin Creamcrest Dairy Products Company from selling milk at a price below that specified by the director in a regulation (Santa Clara Order No. 17) promulgated

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

pursuant to the Milk Stablization Act (Agr. Code, div. 6, ch. 17) and (2) to recover civil penalties from Creamcrest for previous violations of that regulation. In a collateral matter (S.F. No. 21816) the director appeals from a post-judgment order of the superior court substituting Milk Depots, Inc. as defendant in place of Creamcrest.[1]

As will hereinafter be shown, events occurring during the pendency of these appeals have rendered the action moot and accordingly we need not reach the merits of either matter.

Santa Clara Order No. 17, effective May 27, 1961, established a schedule of various minimum prices for the sale of fluid milk in the Santa Clara County marketing area. Insofar as relevant here, that order fixed minimum prices of 43¢ a half-gallon for milk that is (1) produced, (2) processed, and (3) sold at retail at a producer's ranch, and 45¢ a half-gallon for milk that is (1) processed and (2) sold at retail at a distributor's processing plant.[2] Creamcrest, a processing distributor (but not producer) in the Santa Clara marketing area, sold five half-gallons of such milk at the price established for sales at a producer's ranch (43¢) rather than that established for sales at a distributor's processing plant (45¢).

In the present action by the director for an injunction and civil penalties, the trial court found that the method of distribution used by Creamcrest for the retail sale of milk (i.e., drive-in, cash-and-carry) was identical with that used by the producers in the same area making retail sales at their ranches, and that the product sold in each location was of the same quantity and quality. The court concluded that the portion of Order No. 17 providing for the challenged price differential "is discriminatory and invalid for the reason [that] said Order establishes, or attempts to establish, different minimum retail price schedules for one method of distribution." The judgment declared that such price differential was not authorized by the Milk Stabilization Act and contravened sections 11 and 21 of article I of the California Constitution, and that Creamcrest "is permitted to sell fluid milk f.o.b. its processing plant

---

[1] The substitution of parties in the trial court was ordered pursuant to Code of Civil Procedure section 385. In compliance with rule 48(a) of the California Rules of Court the same substitution was made in this court as to the parties to the main appeal (S.F. No. 21394). By that action, however, we do not impliedly rule on the merits of the collateral appeal (S.F. No. 21816) from the trial court's order of substitution; rather, in the present posture of the case the latter appeal should be dismissed as moot.

[2] Order No. 17 also fixed minimum prices of 47¢ a half-gallon for retail store carry-out sales, and 49¢ a half-gallon for home-delivered sales.

at minimum prices . . . applicable to sales at a producer's ranch during the effective period of said Order No. 17, or any amendments thereto." The court denied the requested injunctive relief and civil penalties.

Judgment was entered on April 23, 1962, and the director appealed. Effective October 2, 1963, Creamcrest's fluid milk distributor's license was formally revoked by the Department of Agriculture on other grounds;[3] that revocation became final on March 12, 1964. Meanwhile, Creamcrest went into bankruptcy and ceased doing business on February 27, 1964, pursuant to a decree of the federal district court. Finally, effective March 15, 1964, the director promulgated a new marketing regulation (San Francisco Bay Order No. 4) which in effect supersedes Santa Clara Order No. 17 and eliminates the differential formerly existing between minimum retail prices of milk sold at a producer's ranch and milk sold at a distributor's processing plant; the minimum prices established for each of these categories are now the same.[4]

■ It is settled that "the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. [Citations.]" (*Consolidated Vultee Aircraft Corp.* v. *United Auto. etc. Workers* (1946) 27 Cal.2d 859, 863 [1] [167 P.2d 725], quoting from *Mills* v. *Green* (1895) 159 U.S. 651, 653 [16 S.Ct. 132, 40 L.Ed. 293].) ■ In the present status of the case before us there is neither any "actual controversy" upon which a judgment could operate nor "effectual relief" which could be granted to any party.

---

[3]Creamcrest, which was then insolvent, had been found to be in repeated violation of the statutory requirements relating to time of payment to wholesale milk producers. (Agr. Code, § 4280, subd. (e).) Such violations are among the statutory grounds for revocation of license. (Agr. Code, § 4410, subd. (b).)

[4]A certified copy of San Francisco Bay Order No. 4 has been lodged with this court, and we take judicial notice of its provisions. (Code Civ. Proc., § 1875, subd. 3; *Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184, 210 [13] [5 Cal.Rptr. 553, 353 P.2d 33].)

First, the complaint prays for an injunction to restrain Creamcrest from ''selling, within the Santa Clara marketing area, fluid milk at retail at prices less than the distributor's processing plant prices set forth in Santa Clara Order Number Seventeen (17) or in any amendments or modifications thereof''; but having lost its license, Creamcrest cannot in any event continue in business as a distributor and seller of milk in this state. (Agr. Code, § 4375.) ■ Absent extraordinary circumstances not here shown, injunctive relief will not be granted where events have rendered such relief unnecessary or ineffectual. (*Griffith* v. *Department of Public Works* (1959) 52 Cal.2d 848, 853 [1]-854 [2] [345 P.2d 469]; *Early* v. *Santa Clara Broadcasting Co.* (1962) 211 Cal.App.2d 367, 372 [7] - 373 [9] [27 Cal.Rptr. 212]; *Mallon* v. *City of Long Beach* (1958) 164 Cal.App.2d 178, 188 [4] - 190 [9] [330 P.2d 423].)

■ The complaint also seeks to recover civil penalties against Creamcrest in the amount of $2,500. (Agr. Code, § 4410, subd. (c).) It is true that penalties of this nature are not generally dischargeable in bankruptcy. (Bankruptcy Act, § 57j, as amended, 11 U.S.C.A. § 93(j); *In re Mead-Haskell Co.* (D.C. Cal. 1942) 47 F.Supp. 997, 999 [4,5]; *In re James Butler Grocery Co.* (D.C.N.Y. 1938) 22 F.Supp. 993, 994-995; Remington on Bankruptcy (rev. ed. 1956) § 953.50.) But in the present case even if the director were hereafter to obtain a judgment against Creamcrest for the $2,500 in penalties, it is unreasonable to assume that such amount could be collected from a corporation that is bankrupt, has lost its license to do business, and has sold all its assets.

■ The substitution of Milk Depots, Inc. as defendant in place of Creamcrest does not render the case any the less moot. Milk Depots merely purchased Creamcrest's physical plant and is operating it as a similar business, but under its own license from the Department of Agriculture. Milk Depots thus is not, and does not claim to be, liable for any civil penalties incurred by Creamcrest prior to such transfer of owership. Nor is there any need shown for an injunction to restrain Milk Depots from selling fluid milk at minimum retail prices established for sales at a producer's ranch rather than at a distributor's processing plant; since the effective date (March 15, 1964) of San Francisco Bay Order No. 4 there is no longer any differential between such prices, and we cannot assume at this time that Milk Depots will violate the new regulation. In

similar circumstances, appeals have been held moot when the statute or administrative regulation in issue has been repealed prior to the appellate decision. (See, e.g., *Carter* v. *Stevens* (1930) 211 Cal. 281, 293-294 [295 P.28]; *Feder* v. *Lahanier* (1962) 200 Cal.App.2d 483, 484 [1] - 485 [3] [19 Cal.Rptr. 638]; *Nelson* v. *Reilly* (1948) 88 Cal.App.2d 303, 304-306 [1] [198 P.2d 694]; *Hake* v. *City of Bakersfield* (1942) 49 Cal. App.2d 174, 175 [1] [121 P.2d 25]; *O'Neal* v. *Seabury* (1938) 24 Cal.App.2d 308, 310 [1] - 312 [3] [74 P.2d 1082].) For the same reason — i.e., promulgation of the new marketing order — there is no longer in this case "a question of general public interest" (*County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 804 [6] [31 Cal.Rptr. 302, 382 P.2d 342], and cases there cited) which might have compelled us to reach the merits in spite of its mootness as to the present parties.

■ Finally, it is settled that an appeal will not be retained solely to decide the question of liability for costs. (*Turner* v. *Markham* (1909) 156 Cal. 68, 69-70 [103 P. 319]; *Leroy* v. *Bella Vista Investment Co.* (1963) 222 Cal.App.2d 369, 378 [9] [35 Cal.Rptr. 128]; *Hake* v. *City of Bakersfield* (1942) *supra*, 49 Cal.App.2d 174, 175 [2].)

■ It remains to determine the proper disposition of this matter. Ordinarily, of course, when a case becomes moot pending an appellate decision "the court will not proceed to a formal judgment, but will dismiss the appeal." (*Consolidated Vultee Aircraft Corp.* v. *United Auto. etc. Workers* (1946) *supra*, 27 Cal.2d 859, 863 [1], and cases there cited.) But Code of Civil Procedure section 955 declares that (with an exception not here relevant) "The dismissal of an appeal is in effect an affirmance of the judgment or order appealed from. . . ." As we do not reach the merits of the appeal in the case at bench, it is appropriate to avoid thus "impliedly" affirming a judgment which holds unconstitutional a regulation of the Director of Agriculture promulgated pursuant to the Milk Stabilization Act. Since the basis for that judgment has now disappeared we should "dispose of the case, not merely of the appellate proceeding which brought it here." (*In re Rosegarten* (1947) 81 Cal.App.2d 126, 128 [1] [183 P.2d 360], quoting from *Brownlow* v. *Schwartz* (1923) 261 U.S. 216, 218 [43 S.Ct. 263, 67 L.Ed. 620].) That result can be achieved by reversing the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court, with directions to the court to dismiss the proceeding. (See *McConoughey* v. *City of San Diego* (1900) 128 Cal. 366, 368 [60 P. 925];

*In re Rosegarten* (1947) *supra,* 81 Cal.App.2d 126, 129; cf. *United States* v. *Munsingwear, Inc.* (1950) 340 U.S. 36, 39 [71 S.Ct. 104, 95 L.Ed. 36], and cases cited in fn. 2.) Such a reversal, of course, does not imply approval of a contrary judgment, but is merely a procedural step necessary to a proper disposition of this case.

In view of our ruling on the main appeal (S.F. No. 21394) it becomes unnecessary to reach the merits of the collateral appeal (S.F. No. 21816) from the trial court's order substituting the parties defendant. Accordingly, the latter appeal should be dismissed.

In the main appeal (S.F. No. 21394) the judgment is reversed and the cause remanded for the purpose of restoring the matter to the jurisdiction of the superior court, with directions to dismiss the action as moot. The appeal from the order of substitution (S.F. No. 21816) is dismissed. The parties will bear their own costs on each appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Dooling, J., *concurred.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.