Filed 8/20/15  P. v. Loper CA4/1
Opinion on remand from Supreme Court
Earlier published opinion with same docket number filed on 5/20/13

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**OPINION ON REMAND FROM THE CALIFORNIA SUPREME COURT**


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D062693 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD225263) |
| JAMES ALDEN LOPER, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Appeal dismissed as moot.


Raymond Mark DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

After remand from our Supreme Court, we consider James Alden Loper's appeal from the trial court's order denying a request for recall of his sentence initiated in 2012 by the Department of Corrections and Rehabilitation (the Department) under the compassionate release provision set forth in Penal Code section 1170, subdivision (e).[1] As we will explain, we conclude that the appeal is moot due to Loper's release from prison in June 2015, and we accordingly dismiss the appeal.

I

FACTUAL AND PROCEDURAL BACKGROUND

Loper, who was born in 1953, pled guilty in 2010 to making a misrepresentation of fact in violation of Insurance Code section 11880, subdivision (a), and he admitted allegations that his crime involved a pattern of felony conduct resulting in a loss of more than $100,000 (§ 186.11, subd. (a)(3)) and that he had incurred a prior strike (§ 667, subds. (b)-(i)). The trial court sentenced Loper to a six-year prison term.

In May 2012, medical personnel at Richard J. Donovan Correctional Facility issued an internal request to obtain compassionate release for Loper pursuant to the procedure set forth in section 1170, subdivision (e). That provision gives the trial court the discretion — upon application of the Department or the Board of Parole Hearings —

---

[1]     Unless otherwise specified all further statutory references are to the Penal Code.

2

to recall the sentence of certain terminally ill or permanently medically incapacitated prisoners who meet the statutory criteria.[2]  The internal request stated that Loper had "uncontrolled hypertension, advanced chronic obstructive pulmonary disease (COPD) and severe coronary artery disease."  According to the internal request, Loper was currently able to perform all activities of daily living and was housed in an outpatient setting, but his "life expectancy is short and possibly less than 6 months," and he "is at increased risk of sudden cardiac death" with his "condition . . . likely to worsen."  In response to the internal request, the Department issued a diagnostic study on June 21, 2012.

On August 14, 2012, the Department's undersecretary of operations sent a letter to the trial court, enclosing the diagnostic study and recommending that Loper's prison commitment and sentence be recalled under section 1170, subdivision (e).  The letter explained that Loper was currently able to perform all the activities of daily living, but

---

[2]	Section 1170, subdivision (e)(2) provides:  "The court shall have the discretion to resentence or recall if the court finds that the facts described in subparagraphs (A) and (B) or subparagraphs (B) and (C) exist:  [¶]  (A) The prisoner is terminally ill with an incurable condition caused by an illness or disease that would produce death within six months, as determined by a physician employed by the department.  [¶]  (B) The conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety.  [¶]  (C) The prisoner is permanently medically incapacitated with a medical condition that renders him or her permanently unable to perform activities of basic daily living, and results in the prisoner requiring 24-hour total care, including, but not limited to, coma, persistent vegetative state, brain death, ventilator-dependency, loss of control of muscular or neurological function, and that incapacitation did not exist at the time of the original sentencing."

represented that "[p]hysicians have determined that he has less than six months to live." According to the letter, Loper's postrelease plan was to reside with his brother.

Pursuant to section 1170, subdivision (e)(3), the trial court held a hearing on August 24, 2012.[3]  At the hearing, the trial court ordered the Department to provide additional information consisting of:  "An update on Mr. Loper's condition; An opinion from a doctor of the [Department] as to whether Mr. Loper's illness would produce death within six months; What treatment is available for Mr. Loper; What, if any, treatment Mr. Loper refused while in prison and how that refusal may have affected his current condition; [and] . . . a more extensive release plan . . . ."

The chief medical executive at Richard J. Donovan Correctional Facility sent a letter to the trial court on September 12, 2012, in response to the court's request. According to the letter, Loper's condition "remain[ed] stable," his hypertension had improved, he was "not presenting with any symptoms suggestive for acute congestive heart failure," but was "an ill individual with disease processes that will continue to progress, despite treatment, leading to his eventual demise."  With respect to Loper's life expectancy, the letter stated that "[h]is current status does not indicate for or against a prognosis of less than six months to live."  The Department did not provide a more extensive postrelease plan.

---

3    Loper waived his right of personal presence, and appointed counsel appeared for Loper at the relevant hearings.

The trial court held another hearing on September 14, 2012, at which it denied the Department's request to recall Loper's sentence because the statutory requirements were not satisfied. As the trial court explained, "there is an insufficient showing for the court to make the findings required under . . . section 1170[, subdivision ](e)(2)(A), specifically that the prisoner has an incurable condition caused by illness or disease that will produce death within six months as determined by a department physician." There was no discussion at the hearing about the possibility of releasing Loper under section 1170, subdivision (e)(2)(C), which applies to prisoners who are "permanently medically incapacitated with a medical condition that renders him or her permanently unable to perform activities of basic daily living, and results in the prisoner requiring 24-hour total care." (§ 1170, subd. (e)(2)(C).) Indeed, any such argument would have been baseless in light of the Department's August 14, 2012 letter to the trial court, which stated that Loper "is currently able to perform all the activities of daily living, and is housed in an outpatient setting."

As the trial court found that Loper's condition did not satisfy the medical requirements of the compassionate release statute, it did not consider whether the public safety requirement for release was met, namely that "the conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety." (§ 1170, subd. (e)(2)(B).) It is unclear how the trial court would have ruled on the public safety requirement had it reached the issue, as the trial court noted at the hearing that it had requested a more extensive postrelease plan based on the fact that Loper was

5

planning to live with his brother, who has an extensive criminal history, and there is no indication that the Department addressed the court's request.

On September 20, 2102, Loper filed a notice of appeal from the trial court's order denying the recall of his sentence, contending that he met the applicable statutory criteria.

In a May 29, 2013 opinion, we dismissed the appeal, agreeing with the Attorney General's contention that an order denying a recall of a sentence under the compassionate release provision of section 1170, subdivision (e) could not be appealed by the prisoner who was the subject of the Department's request for compassionate release.

Our Supreme Court granted Loper's petition for review (No. S211840, Sept. 11, 2013), and on March 5, 2015, issued an opinion reversing our dismissal of Loper's appeal. (*People v. Loper* (2015) 60 Cal.4th 1155.) As the Supreme Court explained, although a prisoner may not *initiate* a request for compassionate release in the trial court, a prisoner may *appeal* from an order denying the Department's compassionate release request. (*Id*. at p. 1158.)

After Loper's appeal was remanded to us for further proceedings, we requested that the parties provide us with supplemental briefing. A document submitted in a request for judicial notice filed along with the Attorney General's supplemental briefing indicated that Loper was expected to be released from prison in June 2015. Upon the date of Loper's expected release from prison, we requested that the parties provide us

with (1) updated information on Loper's custodial status and (2) briefing on whether Loper's appeal had become moot.[4]

The parties provided us with information that Loper was released from prison on June 24, 2015. Specifically, Loper was released from the custody of the Department to postrelease community supervision (PRCS), as provided in sections 3450 to 3465.[5]

---

[4]   In providing supplemental briefing on the merits of the appeal, the parties have requested that we take judicial notice of certain additional documents not previously submitted in connection with the appeal. As we will dismiss the appeal as moot, we have no occasion to consider the additional documentation, and we accordingly deny the requests to take judicial notice. The only documents that we have judicially noticed in connection with this opinion are those documents submitted by the parties on July 2, 2015, in response to our inquiry regarding Loper's current custodial status.

[5]   "PRCS supervision was established as an element of the Criminal Justice Realignment Act of 2011 (enacted by Stats. 2011, ch. 15, §§ 1, 450, amended by Stats. 2011, ch. 361, § 6.7 and Stats. 2012, ch. 43, § 27). The Criminal Justice Realignment Act made significant changes to the sentencing and supervision of persons convicted of felony offenses and shifted responsibility for the custodial housing and postrelease supervision of certain felons from the state to the local jails and probation departments. [Citations.] Under section 3451, low-level offenders serving a prison term who are released from prison 'shall, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision provided by a county agency designated by each county's board of supervisors which is consistent with evidence-based practices, including, but not limited to, supervision policies, procedures, programs, and practices demonstrated by scientific research to reduce recidivism among individuals under postrelease supervision.' The conditions of supervision are detailed in section 3453 . . . ." (*People v. Jones* (2014) 231 Cal.App.4th 1257, 1266.) "Unlike parole, a felon participating in PRCS cannot be returned to prison for violation of his or her postrelease supervision agreement. (§ 3458.) Nor does the Department of Corrections and Rehabilitation have jurisdiction over persons subject to postrelease community supervision. (§ 3457.)" (*People v. Espinoza* (2014) 226 Cal.App.4th 635, 639.)

II

DISCUSSION

In response to our request to provide briefing on whether Loper's appeal from the trial court's order denying him compassionate release has become moot due to Loper's release from prison, the parties take competing positions. The Attorney General contends that the appeal is moot. Loper, in contrast, contends that the appeal is not moot because he may still obtain relief in the form of a recall of his sentence if he is successful in his appeal. Loper also contends that in the event we conclude his appeal is moot, we nevertheless should exercise our discretion to consider the issues presented. As we will explain, we agree with the Attorney General that Loper's release from prison to PRCS has rendered Loper's appeal moot, and we accordingly dismiss the appeal, declining Loper's request that we exercise our discretion to consider the appeal despite its mootness.

We begin our legal analysis by examining the doctrine of mootness. " '[A] case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief.' " (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 925 (*Saraswati*).) " '[T]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132.) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status. ' " ' "It is this court's duty

8

' "to decide actual controversies by a judgment which can be carried into effect." ' " ' " ' "
(*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.)  " 'When no effective relief can be granted, an appeal is moot and will be dismissed.' "  (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 (*MHC*).)

The compassionate release provisions of section 1170, subdivision (e) allow prison officials, with court approval, to obtain the release from prison of a terminally ill or medically incapacitated prisoner.  The specific procedural mechanism that section 1170, subdivision (e) identifies for a trial court to employ in effectuating a compassionate release of an eligible prisoner is either a recall of the prisoner's entire sentence or a resentencing of the prisoner to a sentence that would allow the prisoner to immediately be released from physical confinement in prison.  (§ 1170, subd. (e)(2) [specifying the court's sentence to either "resentence or recall"].)  The statute specifically states that the result of the sentence recall or the resentencing will be that, unless the prisoner requests otherwise, "the prisoner shall be released by the department within 48 hours of receipt of the court's order."  (§ 1170, subd. (e)(9).)  Put simply, the compassionate release statute provides a means by which eligible prisoners may be immediately released from physical confinement in prison.  (See *Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 592 (*Martinez*) ["the provision's primary purpose [is] saving the state money by authorizing *the release from prison custody* of those inmates who are terminally ill or permanently medically incapacitated and do not pose a threat to public safety" (italics added)].)

9

Here, by initiating the compassionate release procedure, the Department sought to obtain Loper's immediate physical release from prison. However, it is undisputed that Loper has *already* been released from prison custody. Accordingly, even were we to reverse the trial court's order denying the Department's compassionate release request, we could not afford any effectual relief to Loper. There is no possibility that Loper will be returned to prison for the instant conviction even if he performs poorly upon release, as section 3458 provides that "[n]o person subject to this title [i.e., PRCS] shall be returned to prison for a violation of any condition of the person's postrelease supervision agreement." Indeed, under the provisions of the PRCS statute, Loper is no longer under the jurisdiction of the Department whatsoever, as section 3457 provides that the Department "shall have no jurisdiction over any person who is under postrelease community supervision." (*Ibid*.)[6]  In short, as the compassionate release statute exists for the purpose of allowing certain eligible prisoners to be immediately released from physical confinement *in prison*, and Loper has already been released from prison with no possibility of return, any opinion that we issue in this case " 'can have no practical impact or provide the parties effectual relief.' " (*Saraswati, supra,* 202 Cal.App.4th at p. 925.)

_____

[6]    Although the PRCS statute provides for the possibility of "flash incarceration" in city or county jail for up to 10 days for violations of the conditions of postrelease supervision at the discretion of the county agency supervising the PRCS, there is no possibility of reimprisonment in state prison for persons on PRCS. (§ 3454, subds. (b), (c).) Moreover, flash incarceration in city or county jail for an ill or medically incapacitated person would not cost the *state prison system* any additional money, and thus does not implicate the cost-saving purpose behind the compassionate release law. (See *Martinez, supra*, 183 Cal.App.4th at p. 592 [discussing cost-saving purpose behind the compassionate release law].)

Loper contends that although he has been released from prison, his appeal is not moot because, were we to conclude that the trial court erred in ruling that Loper did not satisfy the requirements of the compassionate release statute, Loper would be entitled to a complete recall of his sentence and a release from Department custody *as if he had never been sentenced at all*, and therefore would not be subject to PCRS as a felon released after serving his sentence. Loper contends that release from PCRS would constitute meaningful and effective relief on appeal, as his medical condition makes it onerous for him to comply with the conditions of PCRS.[7] We reject Loper's argument for two reasons.

First, we disagree with Loper's assumption that he would necessarily be entitled to a complete recall of his sentence were he to prevail on appeal. The compassionate release provision gives the trial court discretion to either recall a sentence in its entirety *or* to resentence the inmate. (§ 1170, subd. (e)(2).)[8]

---

[7]    As the compassionate release provisions in section 1170, subdivision (e) provide relief to terminally ill and medically incapacitated persons subject to *prison* custody, not to persons subject to the conditions of *county* supervision under the PRCS statute, any difficulties that Loper is experiencing in complying with conditions of PRCS are better addressed to the supervising county agency. As stated in section 3454, subdivision (a), "[e]ach supervising county agency . . . shall establish a review process for assessing and refining a person's program of postrelease supervision."

[8]    Loper states that "the remedy of compassionate release offer[s] what is essentially a *complete* restoration of liberty as if the defendant was never sentenced to state custody." That is not necessarily true. As we have described, the compassionate release procedure provides for a complete recall of a sentence *or* a recall and resentencing to a sentence that would allow immediate release from prison. (§ 1170, subd. (e)(2).) Further, the Department is required to develop a postrelease plan (§ 1170, subd. (e)(7)), and the trial court shall consider the "conditions under which the prisoner would be released" in

11

Second, given the trial court's limited consideration of the issues, the only relief that we can afford Loper, even if he prevails on his appeal, is a *remand* for the trial court to consider — in the first instance — the public safety requirement of the compassionate release statute, namely that "[t]he conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety." (§ 1170, subd. (e)(2)(B).) Under the statute, it is the trial court's role to exercise its discretion to determine whether the public safety requirement of section 1170, subdivision (e)(2)(B) is satisfied. Here, if in exercising that discretion on remand the trial court were to decide that the public safety requirement is met, it would then have to decide whether Loper's immediate release from prison should be effectuated by a recall of Loper's sentence in its entirety or a resentencing. (§ 1170, subd. (e)(2).) However, because Loper is no longer a prisoner subject to the jurisdiction of the Department, it would be impractical and of no effect for the trial court to consider any of those questions. There can be no "conditions under which the prisoner would be released" for the trial court to consider under the public

deciding whether to recall and resentence the prisoner. (§ 1170, subd. (e)(2)(B).) Here, in the letter that the Department sent to the trial court on August 14, 2012, the Department acknowledged that the trial court could decide *either* to recall Loper's sentence in its entirety or to resentence Loper to a different term of imprisonment. Were the trial court to have originally granted the relief sought by the Department by resentencing Loper to a shorter term of imprisonment, making him eligible for immediate release after having served the shortened sentence, Loper might still have been subject to PRCS or parole after release from prison as a condition of his release. (§ 3000 ["A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 shall include a period of parole supervision or postrelease community supervision . . . ."]; § 3451 [except for persons convicted of certain serious offenses, "all persons released from prison . . . shall, upon release from prison . . . , be subject to community supervision"].)

12

safety requirement because Loper has already been released (§ 1170, subd. (e)(2)(B)), and there would be no need to decide whether to recall the sentence or resentence Loper to provide him with immediate release from prison because Loper is no longer confined in prison. In short, we cannot order the trial court to apply the compassionate release statute on remand because that statute is no longer applicable to Loper, who is not confined in prison. Therefore, any appellate relief would be ineffective.

Loper argues that even if we determine the appeal is moot, we should nevertheless exercise our discretion to consider the issues presented in his appeal. Under the doctrine upon which Loper relies, " '[i]f an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot.' " (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 259.) We decline to exercise any such discretion here, as the issues presented by Loper's appeal are "essentially factual" which is "a recognized basis to refuse to decide a moot case." (*Ibid.*; see also *MHC, supra,* 106 Cal.App.4th at p. 215 [declining to consider the appeal despite mootness because the issues presented were "essentially factual in nature and therefore require resolution on a case-by-case basis"].) Although Loper seeks to portray this appeal as a dispute over the statutory interpretation of section 1170, subdivision (e), the issues are primarily factual, turning simply on whether the evidence establishes that a physician determined Loper had a condition that "would produce death within six months" (§ 1170, subd. (e)(2)(A)) or that Loper was medically incapacitated to the extent that he could not perform activities of basic daily

living (§ 1170, subd. (e)(2)(C)).  These are factual issues specific to this case, which are easily resolved by resort to the medical reports in the record, not matters of complicated statutory interpretation or continuing public interest warranting an exception to the mootness doctrine.

## DISPOSITION

The appeal is dismissed as moot.


                                                                    IRION, J.

WE CONCUR:


MCCONNELL, P. J.


O'ROURKE, J.

14