Opinion
 

 ROTH, P. J.
 

 In 1976 the City of Santa Barbara sought to establish a county service area to provide sheriff’s patrol service in the Goleta Valley pursuant to the County Service Area Law. (Gov. Code, § 25210.1 et seq.)
 
 [1]
 
 Its application to that effect was forwarded for review to the county’s local agency formation commission (LAFCO) agreeably with section 25210.3a. LAFCO amended the application and approved the establishment of a county service area for the originally designated purpose but covering the entire area of the County of Santa Barbara, including its five cities, with the recommendation to the county’s board of supervisors: “. . . that it establish zones within the county service area, with tax rates varying with the extent of benefit to each zone derived from services provided to the property within each zone, that each city included within the formation be designated as a zone, and that to the extent allowed by law levels of police service within the various zones be set as appropriate and/or desired by the electorate in each zone.” (See § 25210.8.) A hearing by the board was first held December 13, 1976, and continued on January 3, 1977, pursuant to sections 25210.14-25210.18. At its conclusion the board unanimously agreed to “concur with the recommendation of the [county’s] administrative officer and county counsel [to] deny the city’s request at this time.” Thereafter respondents herein petitioned for writ of mandate to compel appellants to find that sheriff’s patrol services are “extended services” as that term is used in the County Service Area Law and to take action in accordance with section 25210.18 to either establish a county service area for the purpose or to
 
 *281
 
 eliminate use of county general funds to pay the cost of such services. The trial court following hearing on the petition determined the action of the board was arbitrary, capricious and entirely lacking in evidentiary support, rendered its judgment that respondents find and determine the extent to which services described in the application as amended constituted extended services and either establish the service area or abandon the proposal. Its writ to the same effect was issued August 21, 1978. The appeal is from the judgment.
 
 [2]
 

 The purpose of the County Service Area Law, enacted in 1953, is to: “. . . provide an additional alternative method for the furnishing of extended governmental services within such [unincorporated] areas adequate to meet the needs of such areas and to provide for the levy of taxes within such areas in an amount sufficient to pay for extended services provided or additional extended services to be provided.” based upon a legislative finding that: “unprecedented growth in the unincorporated areas of a great many counties of California, particularly since 1940, has created many new and difficult problems of government.” and a recognition that it is: “. . . the duty of counties as instrumentalities of State Government to adequately meet the needs of such areas for extended governmental services and . . . that such areas should pay for the extended services which are provided.” (§ 25210.1.)
 

 The types of extended service for which a service area may be established are:
 

 “(a) Extended police protection.
 

 “(b) Structural fire protection.
 

 “(c) Local park, recreation or parkway facilities and services.
 

 
 *282
 
 “(d) Any other governmental services, hereinafter referred to as miscellaneous extended services
 
 [3]
 
 which the county is authorized by law to perform and which the county does not also perform to the same extent on a countywide basis both within and without cities, . . .
 

 “(e) Extended library facilities and services.
 

 “(f) Television translator station facilities and services, . . .” (§ 25210.4.)
 

 Proceedings for the establishment of a service area are initiated by a county’s board of supervisors, either on its own initiative, upon written request of the governing body of any city in the county or upon petition signed by 10 percent of the registered voters residing within the territory proposed to be included within the area. (§§ 25210.11, 25210.12.) Following approval by the county’s LAFCO (§§ 25210.3a, 25210.13), a resolution of intention to establish the area is adopted by the board of supervisors and a hearing is held wherein protests may be aired. (§§ 25210.14-25210.17a.)
 

 “. . . At the conclusion of the hearing the board shall find and determine the extent to which the services described in the resolution of intention are extended county services. After making the finding the board may abandon the proposed establishment of the county service
 
 *283
 
 area or may, after passing upon all protests, determine to establish the area. If the board abandons the proposed establishment of the county service area the county services found by the board to be extended county services shall not thereafter be provided to the area from general funds of the county. If the board determines to establish the area it shall by resolution so declare and finally determine and establish the boundaries of the county service area and designate the types of services to be performed therein and adopt a resolution either:
 

 “(a) Declaring the area finally established without an election; or
 

 “(b) Declaring the area established, subject to confirmation by the voters of the proposed area on the question of establishment of such area.
 

 “In establishing the boundaries of the area the board may alter the exterior boundaries of the area to include less territory than that described in the notice of the hearing but it may not include any territory not described in the notice of the hearing.
 

 “In designating the types of services to be performed in the county service area the board may eliminate one or more of the types of services specified in the resolution of intention to establish the area but may not include any types of services not specified in the resolution of intention.
 

 “Upon the adoption of a resolution establishing an area without an election, the area is established for all purposes, subject only to compliance with the requirements of Chapter 8 (commencing with Section 54900), Part 1, Division 2, Title 5 of the Government Code and subject to the provisions of Article 2.5 of this chapter.” (§ 25210.18.)
 

 A service area may be dissolved, consolidated or reorganized. (§ 25210.3b.) Extended police protection is subject to annual review in terms of its nature and the extent to be provided, the cost thereof and the manner of levy and collection of taxes associated therewith. (§§ 25210.41-25210.45.)
 

 Nowhere in the statute is there any specific definition of the terms “extended services” or “extended police protection” nor have those terms previously been defined judicially.
 

 
 *284
 
 Appellants maintain the latter term is properly to be understood as meaning that which is in
 
 excess
 
 of the
 
 level
 
 of service normally rendered, as determined by the Attorney General in 57 Ops.Cal.Atty.Gen. 423 (1974).) Respondents, on the other hand, contend the former term and the latter as included within it, means any service not being provided to the same extent on a countywide basis both within and without cities. It is conceded sheriff’s patrol services are not rendered within any city’s limits within the County of Santa Barbara.
 
 [4]
 

 The opinion referred to provides in pertinent part:
 

 “The second question presented is whether the cities in Butte County may request the establishment of county service areas to defray the cost of
 
 existing
 
 sheriff’s services in urban unincorporated territory surrounding the cities, including the unincorporated town of Paradise. The sheriff’s services alluded to would include such services as neighborhood patrolling and crime investigations. We conclude that the cities could so petition. However, before such county service areas could actually be formed, the board of supervisors would be required to find that the existing law enforcement services in the areas in fact included ‘extended police protection’ within the meaning of the County Service Area Law.
 

 “As already noted at the outset,
 
 ‘‘extended
 
 police protection’ is one of the services for which a county service area may be formed. § 25210.4. That this ‘extended police protection’ contemplates sheriffs services is clear. §§ 25210.40-25210.47; see also 38 Ops.Cal.Atty.Gen. 49 (1961). That the sheriffs services which may be included in ‘extended police protection’ includes the usual type of law enforcement services such as neighborhood patrolling and crime investigation also appears to be clear. . . . This being so, no convincing argument could be made that the ‘extended police protection’ contemplated by the County Service Area Law merely applies to a type of service the sheriff normally does not perform. Therefore, as to sheriff’s services, ‘extended police protection’ must contemplate an increased
 
 level
 
 of service over and above that performed under the sheriff’s normal county-wide duties as chief law enforcement officer of the county, such as neighborhood patrolling and crime investigations. See §§ 26600-26603 re sheriff’s duties.
 

 
 *285
 
 “That this is the case is also evident from the County Service Area Act itself. Whereas sections 25210.4 and 25210.4a, enumerating types of extended services speak in terms of such services as ‘structural fire protection,’ ‘water service,’ and ‘sewer service,’ as to police protection the act speaks in terms of
 
 extended
 
 police protection, thus presupposing that a certain level of mandated services already exists in the area which may be increased if the residents want to pay the costs.
 

 “Having determined that the usual ‘type’ of sheriff’s services can be ‘extended police protection,’ we address the question whether existing sheriff’s services could be construed as extended services. This is placed in the context of urban areas surrounding cities in Butte County, and in the unincorporated town of Paradise.
 

 “Thus, a proposal does not appear to be restricted to proposing new services. We therefore conclude that if
 
 in fact
 
 urban areas in Butte County are receiving extended sheriff’s services, and the board of supervisors so found, section 25210.18, a county service area or areas could be formed to defray the costs of the existing services
 
 insofar as they constituted ‘extended police protection. ’
 

 “However, the caveat to such conclusion which we would feel constrained to make is anticipated by question 2(a). As a corollary to question 2, we are asked whether where, because of concentrated population, more extensive patrolling and law enforcement services are being performed, if these could be construed as ‘extended county services’ within the meaning of various provisions of the act, specifically sections 25210.18, 25210.4, 25210.4(a) and 25210.5.
 

 “The sheriff, as the chief law enforcement officer of the county must provide service countywide. However, he must also render the services where they are needed. His services would normally be needed more in urban areas of concentrated population than in remote rural areas. Since crime and requisite law enforcement are necessarily related to population, it necessarily follows that more extensive patrolling and law enforcement would be required in populated areas than in rural areas under the sheriff’s basic mandate to preserve the peace, to investigate public offenses and to arrest criminals. See Cal. Const., Art. V, § 13,
 
 *286
 
 §§ 26600-26603. Or stated otherwise, uniform law enforcement throughout the county normally requires more extensive enforcement in populated areas.
 

 “Thus, a certain basic level of law enforcement must be provided. Each area of the county would be entitled to its ‘share,’ that is, the share required to maintain this level uniform throughout the county. If, however, a particular area is receiving more' than its share,
 
 then
 
 it could be said to be receiving ‘extended police protection.’ A finding as to such existing services would be a matter for factual determination by the board of supervisors. We would hypothesize that a finding to this effect would be unusual in California’s counties due to tax and budgetary limitations. However, the County Service Area Law permits ‘extended police protection’ for an area if the area is willing to pay for it. Conceivably such ‘extended police protection’ could already exist
 
 de facto.”
 
 (57 Ops.Cal. Atty.Gen. 427-429 (1974) [Fn. omitted.].)
 

 We hold that insofar as this analysis is at odds with the conclusion a county service area may be established for extended police protection where such service is not provided to the same extent on a countywide basis both within and without cities it does not correctly state the law. At the same time we are of the opinion there may be instances where services provided countywide both within and without cities are so disparate in their quality or extent as to provide an appropriate subject for application of the County Service Area Law. In so concluding we find no inherent incompatibility between the contentions made by appellants and respondents.
 
 [5]
 
 (Cf. Stone, The County Service Area Law: Meaning of Extended Services, (1976).) Rather, we believe proper application of the statute will depend upon a considered evaluation of the circumstances of any given case, to the end that fairness may be achieved among taxpayers within the perimeters of the factual setting associated with such circumstances.
 

 
 *287
 
 In our view the passage of the County Service Area Law was a legislative response to increasing inequities between residents of incorporated and unincorporated areas respecting the rendition and receipt of various municipal type services. (See Stone, The County Service Area Law: Meaning of Extended Services, (1976),
 
 supra,
 
 at pp. 9-37.) As an alternative to other methods of obtaining correlation between cost burdens and service benefits, such as annexation, incorporation or the creation of special districts, provision was made for county service areas. And, while not requiring unincorporated territories to otherwise change their status, provision was also made whereby a consistent state policy against subsidization of one group of taxpayers by another might be satisfied. (See e.g., §§ 25210.1, 25210.8, 252i0.47, 58106, 60094, 61114; Health & Saf. Code, §§ 20032, 20316; see also Stone, The County Service Area Law: Meaning of Extended Services (1976),
 
 supra,
 
 at pp. 9-37; Comment,
 
 Ad Valorem Financing of Law Enforcement Services: An Equitable Solution To An Inequitable Condition
 
 (1971) 19 UCLA L.Rev.,
 
 supra,
 
 at pp. 66-69.)
 

 In the present matter appellant board of supervision made its determination to deny creation of the proposed service area on the basis of information provided them by the county’s administrative officer that the total cost of sheriff’s patrol services was exceeded by revenues derived from sales of cigarettes and in lieu vehicle taxes attributable to unincorporated area residents and on the advice of county counsel that the term “extended police protection” should be defined as “services a resident should pay for directly by earmarked taxes or indirectly by paying more than his share for other countywide services.” In this the board was in error. The decision whether to create a county service area is not related to any consideration of existing tax revenues or the source of those revenues, but is a function solely of a factual determination whether specified services or the level of those services are being provided throughout the county on a uniform basis both within and without cities. How the service area will be financed once it is formed is a separate question, one to be resolved subsequently to formation and one upon the answer to which creation of the service area does not depend.
 
 [6]
 
 Rather than approach the question of fairness among various taxpayers in a vacuum where the predictable result will be nothing other than confusion, the County Service Area Law contemplates resolution of inequity
 
 *288
 
 based on consideration of specific factual settings which are subject to relatively simple illustration and is no more nor less than one of several means of arriving at a just result in equating tax burdens with service benefits. And, while in the broad sense the statute is not compulsory in its operation, nor indeed self-executing, it is mandatory in its application upon an appropriate affirmative showing of disparity
 
 [7]
 
 in the receipt of services by one group as opposed to another.
 

 Having thus incorrectly applied the law in reaching its decision, the action of the board was subject to review in mandamus proceedings.
 
 (Strumsky
 
 v.
 
 San Diego County Employees Retirement Assn.
 
 (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].) The conclusions of the trial court in this case being consistent with our views as expressed herein, the judgment appealed from is affirmed.
 

 Fleming, J., and Compton, J., concurred.
 

 A petition for a rehearing was denied July 17, 1979, and appellants’ petition for a hearing by the Supreme Court was denied August 22, 1979.
 

 [1]
 

 All section references hereinafter are to the Government Code unless otherwise specified.
 

 [2]
 

 In pertinent part the judgment provided: “A Peremptory Writ of Mandate issued [jz'c] under the seal of this court, commanding that respondent County, and its Board of Supervisors shall find and determine the extent to which services described in the Resolution of Intention (extended police protection) are extended County services. “After making such finding, the Board shall (1) abandon the proposed establishment of a County service area; “or, after passing on all protests, (2) determine to establish the area. “PROVIDED, however, if the board abandons the proposed establishment of the County service area, the County services found by the Board to be extended County services shall not thereafter be provided to the area from general funds of the County;...”
 

 [3]
 

 “... [Miscellaneous extended services]... shall include, but shall not be limited to, the following: “(1) Water service including the acquisition, construction, operation, replacement, maintenance and repair of water supply and distribution systems, including land, easements and rights-of-way and water rights. “(2) Sewer service, including the acquisition, “construction, operation, replacement, maintenance and repair of sewage collection, transportation and disposal systems, including land, easements and rights-of-way. “(3) Pest or rodent control. “(4) Street and highway sweeping. “(5) Street and highway lighting including the acquisition, contruction, replacement, maintenance and repair of a street or highway lighting system, including land, easements and rights-of-way. “(6) Refuse collection. “(7) Garbage collection. “(8) Ambulance service. “(9) Area planning by an area planning commission established pursuant to Article 11 (commencing with Section 65600) of Chapter 3 of Title 7. “(10) Soil conservation and drainage control. “(11) Animal control. “(12) Services provided by a municipal advisory council established pursuant to Section 31010.” (§ 25210.4a.)
 

 [4]
 

 It is not necessary for us and we decline to discuss the question of the sheriff’s jurisdiction within such limits. See Comment,
 
 Ad Valorem Financing of Law Enforcement Services: An Equitable Solution To An Inequitable Condition
 
 (1971) 19 UCLA L.Rev. 59.
 

 [5]
 

 Section 25210.4c is illustrative in this respect. It provides: “A county service area including the entire unincorporated area of the county may be established to provide any or all of the services authorized in Sections 25210.4 or 25210.4a within such area of the county notwithstanding that the services proposed to be provided within the service area are being provided to the entire unincorporated area at the same or similar level to that proposed, provided the board of supervisors finds that the services proposed to be provided within such service area are not being provided to the same extent on a countywide basis both within and without cities.”
 

 [6]
 

 For this reason, appellants’ contention the addition of article XIII A to our state Constitution precludes the relief sought by respondents and has rendered the matter moot is not well taken.
 

 [7]
 

 The term “disparity” in this context will, again, not be synonomous with “difference” but will consist of a cognizable disparity, either in the fact services are being provided nonuniformly or in the fact the level of those services is not everywhere the same, as the term “level” was understood by the Attorney General in the opinion previously referred to.