[Civ. No. 66066. Second Dist., Div. Four. Oct. 11, 1983.]

CITY OF LOS ANGELES et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

John H. Larson and De Witt W. Clinton, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and Roger M. Whitby, Deputy County Counsel, for Defendants and Appellants.

Ira Reiner, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Richard A. Dawson, Assistant City Attorney, for Plaintiffs and Respondents.

Robert G. Boehm, City Attorney (Chico), as Amicus Curiae on behalf of Plaintiffs and Respondents.

OPINION

AMERIAN, J.—The City of Los Angeles and various of its elected officials in their capacity as taxpayers residing in the city (herein respondents) filed suit in 1974, naming as defendants County of Los Angeles and certain of its department heads and elected officials (herein appellants). Respondents sought declaratory relief and an injunction, challenging a practice utilized by the county. The practice at issue is the allocation by the county of funds raised from property taxes on property located in an incorporated city to finance certain services to residents of unincorporated areas of the county.

After trial in March and April 1978, the judgment of the court declared that, "the practice of the defendants of providing only certain services and benefits on an [sic] uniform countywide basis while providing other munic-

ipal-type services only on a non-uniform basis to unincorporated areas without charge, and financing both types of services by the use of property tax revenues, contravenes the equal protection clause of the Federal Constitution and Article 1, Section 7, and Article 4, Section 16, of the California Constitution, as the practice relates to the financing of the non-uniform services in the unincorporated areas; . . ."

The court ordered that appellants be enjoined from, "financing the providing of non-uniform services such as Sheriff's patrol and station detectives, County Engineer, Parks and Recreation, Regional Planning, Animal Control, and Forester and Fire Warden structural fire protection, including related costs for Workers' Compensation, Retirement, and Motor Vehicles, to the unincorporated areas of the County of Los Angeles through the use of property tax revenues, which are generated uniformily [*sic*] throughout the County. The defendants may use fees or charges for services, assessments, or special taxes limited to the unincorporated areas to finance non-uniform services, and revenue wholly generated in the unincorporated areas such as Sales and Cigarette Tax and Franchises."

This appeal followed.

Respondents have argued the case at the trial level and in this court on the premise that there are certain services performed by a county for residents of the county which benefit all of the residents of the county, without regard to whether those residents live in an incorporated city or in unincorporated territory. Examples of this type of service are the courts, probation department and jails. These are referred to as "uniform services." There are other services which, it is argued, benefit only residents of unincorporated areas. These are referred to as "non-uniform services" and include sheriff patrol, county engineer, parks and recreation, regional planning, animal control and structural fire protection.[1]

The trial court made findings that, "8. The defendant, County of Los Angeles, acting through the other defendants, provides certain services to all parts of the County, whether incorporated or unincorporated area, such as courts, hospitals, welfare, health and jails. These services are designated as 'uniform services' because they are provided countywide without special charge to taxpayers of incorporated or unincorporated areas.

"10. The defendant, County of Los Angeles, acting through the other defendants, also provides such services as Sheriff's Patrol and Detective

---

[1] It appears from the record that appellant may have conceded at trial that this categorization was appropriate.

services, County Engineer, Animal Control, Regional Planning, and local parks in the unincorporated [*sic*] areas. These services are designated as 'non-uniform services' because they are not provided to the same extent in cities as in unincorporated areas."

## ISSUES

Appellants argue that the judgment of the trial court should be reversed because (1) the entire issue was rendered moot by the passage of Proposition 13; (2) there is no evidence of a tax subsidy of the unincorporated area of Los Angeles County by taxpayers of the City of Los Angeles; (3) as to any tax subsidy which might exist, any attempt to eliminate it may result in a greater inequity; (4) the present system of financing county government is not constitutionally impermissible; and (5) residents of cities receive benefit from services to unincorporated areas.

## DISCUSSION

The trial court determined that under the state and federal Constitutions, the use by the county of property tax revenues to finance both uniform and nonuniform services denied equal protection to city taxpayers. The rationale was that property taxpayers in incorporated areas were obliged to pay both city property taxes and county property taxes to support city services, uniform county services and nonuniform county services. Property taxpayers in unincorporated areas, on the other hand, were required to pay only county property taxes, which supported uniform and nonuniform county services.

Each side presented evidence at trial illustrating the varying total property tax rate paid by residents of certain municipalities in the county, as compared with the varying total tax rate paid by residents of selected portions of unincorporated areas. The difference in total tax rate arose because, while the county portion of the rate was constant for all property in the entire county, the rates for city and municipal-type services, education and water district were not the same throughout the county. The result was that the total tax rate paid by property taxpayers depended on whether the real estate was situated in unincorporated or incorporated areas. Additionally, in incorporated areas, the rate varied from city to city. In unincorporated areas, the rate varied from community to community.

At the time of trial, city's taxpayers paid *both* city and county taxes. The trial court found this to be a denial of equal protection because residents of unincorporated areas of the county paid only county property tax and received benefits allegedly not provided to residents of incorporated areas of

the county. The benefits were funded, in part, by property taxes paid to the county by the residents of incorporated areas.

Shortly after trial in this matter and three and one-half years after the action was filed, at the 1978 Primary Election on June 6, 1978, article XIII A was enacted by the voters.[2] Section 1, subdivision (a) of that article provides, "The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties."

After article XIII A became law, the Legislature directed that there shall be a single local property tax, shared by local government agencies designated by the Legislature. Immediately after article XIII A of the Constitution became effective, the Legislature passed Revenue and Taxation Code section 2237, which provided, "(a) Notwithstanding any other provision of law, except as provided in subdivision (b), no local agency, school district, county superintendent of schools, or community college district shall levy an ad valorem property tax, other than that amount which is equal to the amount needed to make annual payments for the interest and principal on general obligation bonds or other indebtedness approved by the voters prior to July 1, 1978 or the amount levied pursuant to Part 10 (commencing with Section 15000) of Division 1 and Sections 39308, 39311, 81338, and 81341 of the Education Code. [¶] (b) A county shall levy an ad valorem property tax on taxable assessed value at a rate equal to four dollars ($4) per one hundred dollars ($100) of assessed value. The revenue from such tax shall be distributed, subject to the allocation and payment as provided in subdivision (d) of Section 33675 of the Health and Safety Code, to local agencies, school districts, county superintendents of schools, and community college districts in accordance with the provisions of Section 26912 of the Government Code."

Revenue and Taxation Code section 2237 was repealed in 1980. Revenue and Taxation Code section 93, added in 1980, now provides, "(a) Notwithstanding any other provision of law, except as provided in subdivision (b), no local agency, school district, county superintendent of schools, or community college district shall levy an ad valorem property tax, other than that amount which is equal to the amount needed to make annual payments for the interest and principal on general obligation bonds or other indebtedness approved by the voters prior to July 1, 1978 or the amount levied pursuant to Part 10 (commencing with Section 15000) of Division 1 and Sections 39308, 39311, 81338, and 81341 of the Education Code. In deter-

---

[2]This article is popularly referred to as Proposition 13.

mining the tax rate required for the purposes specified in this subdivision, the amount of the levy shall be increased to compensate for any allocation and payment of tax revenues required pursuant to subdivision (d) of Section 33670 and subdivision (d) of Section 33675 of the Health and Safety Code. [¶] (b) A county shall levy an ad valorem property tax on taxable assessed value at a rate equal to four dollars ($4) per one hundred dollars ($100) of assessed value, and at an equivalent rate when the ratio prescribed in Section 401 is changed from 25 percent to 100 percent. The revenue from such tax shall be distributed, subject to the allocation and payment as provided in subdivision (d) of Section 33675 of the Health and Safety Code, to local agencies, school districts, county superintendents of schools, and community college districts in accordance with the provisions of the Government Code."

With the adoption of article XIII A, and implementing legislation, then, there is only a single local property tax rate. Thus, all city property taxpayers and all county property taxpayers pay the same ad valorem tax rate, currently $1 per $100 of fully assessed value. (Rev. & Tax. Code, § 93, subd. (b).)

In summary, since enactment of article XIII A, residents of incorporated areas no longer pay a municipal property tax, they now pay only a county property tax. Residents of unincorporated areas of the county pay the same county tax. Further, article XIII A has limited the amount of property taxes which may be assessed by the county. As a consequence, the property tax revenues the county receives have been significantly reduced.

The trial court had before it a pleading prepared in 1974 and challenging practices and procedures which were in effect in 1974. In paragraph 12 of the complaint, respondent alleged, "The expense of the County of Los Angeles in providing uniform and non-uniform services is financed to a *substantial* degree by the County general property tax which is assessed at the same rate in both the incorporated and unincorporated areas of the County. Property tax revenues go to the County general fund and are used for the payment of uniform and non-uniform services. The plaintiffs and other property taxpayers of the incorporated areas in the County of Los Angeles are bearing a portion of the cost of providing non-uniform services, which services they are legally prevented from receiving, while at the same time they are assessed and pay city property taxes for identical services which are provided by their own city jurisdictions." (Italics added.) In the findings of fact the court found, "The expense of the County of Los Angeles in providing uniform and non-uniform services is financed to a *substantial* degree by the use of County general revenues. A *significant* element of

County general revenues is the County general property tax." (Italics added.)

We conclude that the issue presented to the trial court was the constitutionality of a mechanism concerning property taxation and disbursements of revenue therefrom which has been dismantled by virtue of article XIII A.

■ It is settled that an appellate court is to decide actual controversies by a judgment which can be carried into effect. The appellate court cannot render opinions " 'upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from a judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant . . . any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " (*Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725].) (See also *Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924]; *Bell* v. *Board of Supervisors* (1976) 55 Cal.App.3d 629, 636 [127 Cal.Rptr. 757]; *Environmental Coalition of Orange County, Inc.* v. *Local Agency Formation Com.* (1980) 110 Cal.App.3d 164 [167 Cal.Rptr. 735].)

In many cases where occurrence of "events" was responsible for creating the absence of actual controversy, the actual consequences triggering the lack of actual controversy were apparent. (See, e.g., *Donato* v. *Bd. of Barber Examiners* (1943) 56 Cal.App.2d 916 [133 P.2d 490], (where plaintiff sought to enjoin adoption of minimum price schedules by barber examiners. The matter was dismissed in the trial court after demurrer was sustained without leave to amend. The case became moot because, before the appeal was decided, the minimum price schedule was adopted.); *Bell* v. *Bd. of Supervisors, supra,* 55 Cal.App.3d 629 (where legislation challenged by Bell on constitutional grounds was repealed by the legislative body pending appeal); *Paul* v. *Milk Depots, Inc., supra,* 62 Cal.2d 129 (where appeal from judgment denying injunction and civil penalties against a milk distributor was rendered moot, in part because the distributor's license was revoked and it went into bankruptcy after entry of judgment in the trial court).

In support of their argument that the passage of article XIII A has not rendered this action moot, respondents cite *City of Santa Barbara* v. *County of Santa Barbara* (1979) 94 Cal.App.3d 277 [156 Cal.Rptr. 320]. That case, however, arose in a factual setting far removed from the instant case. In *Santa Barbara,* the city sought to establish a county service area and the county denied the request. The court held that the rationale on which the

board of supervisors denied the request was erroneous. The court observed, "The decision whether to create a county service area is not related to any consideration of existing tax revenues or the source of those revenues, but is a function solely of a factual determination whether specified services or the level of those services are being provided throughout the county on a uniform basis both within and without cities. How the service area will be financed once it is formed is a separate question, one to be resolved subsequently to formation and one upon the answer to which creation of this service area does not depend." (At p. 287.) It was for this reason, the court stated in a footnote, that the addition of article XIII A to the state Constitution did not render that matter moot.

In the case before us, however, testimony at trial indicated that the 1977-1978 total budget for the County of Los Angeles (the pre-Prop. 13 era) was in the area of $3.6 billion dollars. The amount financed from local property taxes was $1,157,014,293. After passage of article XIII A, the amount of money realized by the county from property taxes was reduced. The record does not disclose either the percent of the county budget for 1978-1979 or later years which was financed from local property taxes or the dollar amount raised by property taxes for 1978-1979 or later years.[3]

### CONCLUSION

■ Since 1978, when this case was tried, the method of financing local government has undergone massive changes. Those changes, in our view, render this action moot. The post-Proposition 13 financing problems, sources of revenue and levels of expenditure understandably have not been adequately addressed in the pleadings or in the trial court.

The facts upon which the judgment was rendered no longer are operative. The actual consequences of article XIII A were not presented to the trial court and are not in the record before us. To entertain this appeal would be to engage impermissibly in a purely academic exercise. We must therefore reverse the judgment with directions to the court to dismiss the proceeding as moot. (*Paul* v. *Milk Depots, Inc., supra,* 62 Cal.2d 129, 134.)

Because we reach the conclusion that this action is moot, we need not and do not reach the remaining errors urged upon us by appellants.

---

[3]According to the findings of fact, the 1978-1979 county budget reflected $600 million dollars in property taxes and there was an increase of $300 million dollars in the county budgeted expenditures.

## Disposition

The judgment is reversed with directions to the trial court to dismiss the matter as moot.

McClosky, Acting P. J., and Ackerman, J.,* concurred.

A petition for a rehearing was denied October 28, 1983, and respondents' petition for a hearing by the Supreme Court was denied December 14, 1983.

*Assigned by the Chairperson of the Judicial Council.