TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  | : |  |
| --- | --- | --- |
| OPINION | : | |
| | : | No. 94-401 |
| of | : | |
| | : | August 31, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a Local Agency Formation Commission approve the continuation of a county service area within territory to be annexed by a city even though the level of services provided in the area will be the same as the level of services provided by the city to its other residents?

CONCLUSION

A Local Agency Formation Commission may approve the continuation of a county service area within territory to be annexed by a city even though the level of services provided in the area will be the same as the level of the services provided by the city to its other residents, but only when the commission finds that (1) discontinuation would deprive the area of services needed to ensure the health, safety, or welfare of the residents and (2) continuation would not affect the ability of the city to provide any services.

ANALYSIS

We are requested to consider the relationship between two statutory schemes in determining whether the requirements of the one may be waived under the terms of the other when certain conditions are present. Specifically, may a Local Agency Formation Commission ("LAFCO") approve the annexation of territory by a city if the territory is part of a community service area providing the same level of services as received by the city's residents and the territory is to continue to be served by the community service area? We conclude that the LAFCO may approve the annexation if it is able to make certain requisite findings with respect to the services provided to the area's residents.

1.                                                    94-401

A.     The County Service Area Law

The County Service Area Law (Gov. Code, §§ 25210.1-25211.33)[1] was enacted by the Legislature in order to provide for the growing needs of development in unincorporated areas of the state. (*Byers* v. *Board of Supervisors* (1968) 262 Cal.App.2d 148, 153; 65 Ops.Cal.Atty.Gen. 176, 177 (1982); 57 Ops.Cal.Atty.Gen. 423, 424-425 (1974).) Section 25210.1 states:

"The Legislature hereby finds and declares that unprecedented growth in the unincorporated areas of a great many counties of California, particularly since 1940, has created many new and difficult problems of government. As a result of large population growth and intensive residential, commercial and industrial development in such areas, extended governmental services are needed in such areas.

"The Legislature recognizes the duty of counties as instrumentalities of State Government to adequately meet the needs of such areas for extended governmental services and also recognizes that such areas should pay for the extended services which are provided.

"The residents and property owners of such areas are entitled to have made available to them reasonable alternative methods of providing or securing the extended services they require and to choose among the alternatives a method best suited to their local circumstances.

"It is the purpose of this chapter to provide an additional alternative method for the furnishing of extended governmental services within such areas adequate to meet the needs of such areas and to provide for the levy of taxes within such areas in an amount sufficient to pay for extended services provided or additional extended services to be provided."

County service areas may be established to provide, among other services, police protection, fire protection, water, road maintenance, libraries, and park facilities. (§§ 25210.4, 25210.4a.) A county service area may consist of all or part of a county's unincorporated area, and with the consent of a city all or any part of its territory. (§§ 25210.10, 25210.10a.) The services may be funded by the imposition of special taxes, service charges, and connection charges. (§§ 25210.6-25210.9c.)

In *City of Santa Barbara* v. *County of Santa Barbara* (1979) 94 Cal.App.3d 277, 287, the court described the purposes of the County Service Area Law as follows:

"In our view the passage of the County Service Area Law was a legislative response to increasing inequities between residents of incorporated and unincorporated areas respecting the rendition and receipt of various municipal type services. (See Stone, The County Service Area Law:  Meaning of Extended Services, (1976), *supra*, at pp. 9-37.) As an alternative to other methods of obtaining correlation between cost burdens and service benefits, such as annexation, incorporation or the creation of special districts, provision was made for county service areas.  And, while not requiring unincorporated territories to otherwise change their status, provision was also made whereby a consistent state policy against subsidization of one group of taxpayers by another might be satisfied. [Citations.]"

---

[1]Unidentified section references herein are to the Government Code.

B.    The Cortese-Knox Local Government Reorganization Act of 1985

Under the general terms of the Cortese-Knox Local Government Reorganization Act of 1985 (§§ 56000-57550), a LAFCO must approve any changes of organization by cities and special districts.  Section 56375 provides in part:

"The commission shall have all of the following powers and duties subject to any limitations upon its jurisdiction set forth in this part:

"(a) To review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization. . . ."

A "change of organization" is defined in section 56021:

"`Change of organization' means any of the following:

"(a)  A city incorporation.

"(b)  A district formation.

"(c)  An annexation to, or detachment from, a city or district.

"(d)  A disincorporation of a city.

"(e)  A district dissolution.

"(f)  A consolidation of cities or special districts.

"(g)  A merger or establishment of a subsidiary district."

A "reorganization" is defined in section 56073 as follows:  "`Reorganization' means two or more changes of organization initiated in a single proposal."

The purposes to be served by requiring the approval of a LAFCO for any changes of organization made by cities and special districts are set forth in section 56001:

"The Legislature finds and declares that it is the policy of the state to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state.  The Legislature recognizes that the logical formation and determination of local agency boundaries is an important factor in promoting orderly development.  Therefore, the Legislature further finds and declares that this policy should be effected by the logical formation and modification of the boundaries of local agencies.

"The Legislature recognized that urban population densities and intensive residential, commercial, and industrial development necessitate a broad spectrum and high level of community services and controls.  The Legislature also recognizes that when areas become urbanized to the extent that they need the full range of community services, priorities are required to be established regarding the type and levels of services that the residents of an urban community need and desire; that community service priorities be established by weighing the total community service

3.                                          94-401

needs against the total financial resources available for securing community services; and that those community service priorities are required to reflect local circumstances, conditions, and limited financial resources. The Legislature finds and declares that a single governmental agency, rather than several limited purpose agencies, is in many cases better able to assess and be accountable for community service needs and financial resources and, therefore, is the best mechanism for establishing community service priorities."

### C. A City's Annexation of County Service Area Territory

Section 25210.90 provides in part:

"Whenever any territory in a county service area is included within a city by reason of incorporation, annexation or otherwise that territory shall be automatically excluded from the county service area upon the effective date of its inclusion in the city, whether or not such inclusion within a city occurs before or after the completion of the formation of the county service area . . . ."

Accordingly, as would be expected, a county service area is normally discontinued when its territory is annexed by a city.

However, as previously indicated, a county service area may serve part or all of a city's territory. Section 25210.10a provides:

"All or any part of a city may be included in the formation of a county service area if a resolution of consent adopted by a majority vote of the membership of the city legislative body is filed with the clerk of the board of supervisors before the board adopts its resolution of intention."

More importantly for purposes of the question presented, subdivision (p) of section 56375 authorizes a LAFCO to allow the continuation of a county service area when the territory is annexed by a city if certain conditions are met. Under section 56375, subdivision (p), a LAFCO is authorized:

"To waive the application of Section 25210.90 . . . if it finds the application would deprive an area of a service needed to ensure the health, safety, or welfare of the residents of the area and if it finds that the waiver would not affect the ability of a city to provide any service. However, within 60 days of the inclusion of the territory within the city, the legislative body may adopt a resolution nullifying the waiver."

Hence, although a county service area is normally discontinued for any territory annexed by a city (§ 25210.90), it may continue to exist after annexation if two conditions are met. First, would discontinuation of the county service area "deprive [the] area of a service needed to insure the health, safety, or welfare of the residents of the area"? Second, would continuation of the county service area "not affect the ability of [the] city to provide any service"?

We view these two questions as distinctly different from the question of the level of services provided by a county service area in comparison to that provided by a city. The issue of the level of services is more appropriately addressed when creation of a county service area is being considered. As stated in *City of Santa Barbara* v. *County of Santa Barbara, supra,* 94 Cal.App.3d 277, 287-288:

"... The decision whether to create a county service area is not related to any consideration of existing tax revenues or the source of those revenues, but is a function solely of a factual determination whether specified services or the level of those services are being provided throughout the county on a uniform basis both within and without cities. How the service area will be financed once it is formed is a separate question, one to be resolved subsequently to formation and one upon the answer to which creation of the service area does not depend. Rather than approach the question of fairness among various taxpayers in a vacuum where the predictable result will be nothing other than confusion, the County Service Area Law contemplates resolution of inequity based on consideration of specific factual settings which are subject to relatively simple illustration and is no more nor less than one of several means of arriving at a just result in equating tax burdens with service benefits. And, while in the broad sense the statute is not compulsory in its operation, nor indeed self-executing, it is mandatory in its application upon an appropriate affirmative showing of disparity in the receipt of services by one group as opposed to another." (Fn. omitted.)

The level of services may thus be evaluated at the time a county service area is created.

Of course, what the level of services are in an existing county service area and in an annexing city's jurisdiction may tangentially relate to the issues of whether discontinuation of the county service area might deprive the area residents of a needed service or whether continuation might affect the ability of the city to provide a particular service. Obviously, the level of services between the two will either be equal or unequal both before and after annexation. All that we conclude here is that the focus of subdivision (p) of section 56375 is upon considerations other than quantifying the level of services in the county service area and in the annexing city to determine whether they are equal.

For example, we are advised that this request for our opinion was prompted by the proposal of a county to establish a county service area entirely within unincorporated territory in order to provide extended services equal to those furnished in the adjoining cities and that one of the cities may thereafter annex part of that territory. While a consideration of the level of services provided may be appropriate in determining whether to form the county service area in the first instance, such consideration is not dispositive in determining whether the county service area should thereafter be continued in the territory annexed by the city.

In other words, the residents in the proposed county service area need not be receiving a different level of services than that received by other city residents in order to have the county service area continued. The mere fact that both groups would receive the same level of services if the county service area is continued does not answer the question of whether discontinuation would "deprive" the area of a needed service.

What the LAFCO must decide is whether the city would be in the financial condition and have the physical resources to provide necessary services in the annexed territory. If not, then discontinuation of the county service area might well deprive the area of services needed to ensure the health, safety, or welfare of the residents and continuation would not affect the ability of the city to provide the services.

In answer to the question presented, therefore, we conclude that a LAFCO may approve the continuation of a county service area within territory to be annexed by a city even though the level of services provided in the area will be the same as the level of services provided by the city to its other residents, but only when the LAFCO finds that (1) discontinuation would

deprive the area of services needed to ensure the health, safety, or welfare of the residents and (2) continuation would not affect the ability of the city to provide any services.

* * * * *