Filed 1/16/14  In re Wendy P. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re WENDY P. et al., Persons Coming Under the Juvenile Court Law. | B247859 (Los Angeles County Super. Ct. No. CK97265) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANDRES P., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jacqueline Lewis, Commissioner.  Affirmed in part and dismissed in part.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

The presumed father, Andres P., appeals from the juvenile court's order assuming jurisdiction over his children, Wendy P., Andrea P. and J.P., pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (j)[1] and from that portion of the juvenile court's order removing the children from his physical custody and granting only monitored visits. We affirm the juvenile court's order assuming jurisdiction and dismiss as moot that portion of Andres P.'s appeal challenging the order removing the children from his custody and requiring that his visits be monitored.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2013, the Department of Children and Family Services (DCFS or the Department) filed a juvenile dependency petition in the Los Angeles Superior Court pursuant to section 300, subdivisions (b) and (j) with regard to 14-year-old Wendy P., 10-year-old Andrea P., and 8-year-old J.P. The petition, which indicated the children had been detained on January 6, 2013, alleged with regard to subdivision (b) that they "ha[d] suffered, or there [was] a substantial risk that [they would] suffer, serious physical harm or illness" as "a result of the failure or inability of [their parents] . . . to supervise or protect [them] adequately," or as "a result of the willful or negligent failure of [their] parent[s] . . . to supervise or protect [them] adequately from the conduct of the custodian with whom [they had] been left" or "by the inability of the parent[s] . . . to provide regular care for the [children] due to the parent[s'] . . . mental illness, developmental disability, or substance abuse."[2] With regard to subdivision (j), the petition indicated Wendy P.'s and Andrea P.'s sibling, J.P., had "been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there [was] a substantial risk that [Wendy P. and Andrea P. would] be abused or neglected, as defined in those subdivisions."

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    The petition had also originally alleged, pursuant to section 300, subdivision (b), that Andres P. had a history of substance abuse rendering him incapable of providing regular care for the children. However, at the adjudicatory hearing held on February 13, 2013, the juvenile court dismissed that allegation.

2

In support of the allegations made pursuant to section 300, subdivisions (b) and (j), it was asserted that on January 6, 2013, the children's parents had placed "[J.P.] in a detrimental and endangering situation in that the father drove a vehicle with the child and the mother as passengers, while the father was under the influence of alcohol and cocaine." In addition, J.P. had not been in a "booster seat" and had not been wearing a seat belt.[3] The vehicle being driven by Andres P. had then been struck by another vehicle and the accident resulted in J.P., who had been thrown from the car, sustaining critical brain trauma, over 20 fractures to his skull, "intracerebral bleeding to [his] brain[,] bruising and swelling to [his] face, eyes and body, and a fracture to [his] right clavicle." On the night of the accident, Andres P. was arrested for child endangerment and driving under the influence of alcohol and drugs.

In a detention report prepared by a DCFS social worker on January 9, 2013 in preparation for a hearing to be held that day, it was indicated J.P. was in the pediatric intensive care unit at the Los Angeles County USC Medical Center and the attending physician had indicated the child had been "resuscitated upon arriving [at] the Emergency Room and [was] in very critical condition." When the social worker squeezed J.P.'s hand, he was unresponsive.

Although he was found not to have caused the traffic accident, as he had been driving while under the influence and had endangered the life of a child, Andres P. had been taken into custody. The arresting officer reported that "the odor of alcohol was detected coming from [Andres P.'s] person and he was observed to display symptoms associated with being under the influence of alcohol." When questioned, Andres P. stated he believed that when his car was hit by the oncoming car, J.P. "flew out of the car." At the time of the social worker's report, Andres P. was being held at the Los Angeles County USC Surgical Observation Unit. It appeared he had not suffered any significant injuries, but was being held for observation. Andres P. denied having had

---

[3]     Andres P. later indicated he did not know that children riding in the back seat of a car were required to wear a seatbelt.

an alcoholic beverage within several hours of the accident and indicated he had used cocaine only once, on Friday, January 4, 2013. However, test results indicated he had a blood alcohol level of .136 and "positive toxicology for cocaine." Andres P. was later transferred to the Los Angeles Police Department's Central Division Station Jail under a "no bail" designation. An officer at the station "confirmed that he smelled alcohol coming from [Andres P.'s] person and that [Andres P.] appeared to be inebriated."

The children's mother, Catalina S., who had also sustained serious injuries during the traffic accident including "a [four]-inch laceration to the top/center of her head," had been hospitalized in the intensive care unit of the Los Angeles County USC Medical Center. During an interview with the social worker, Catalina S., who had "tested negative for alcohol and/or illicit drugs," stated she was "not sure of how the accident [had] occurred." She and Andres P. had just picked up J.P. from the home of her brother, Margarito S. Andres P. was driving the car. She, Catalina S., was in the front passenger seat and J.P. was sitting in the rear seat.[4] As Andres P. was getting ready to turn onto the street where their home is located, a black vehicle traveling at a high rate of speed hit their car. The next thing Catalina S. could remember was firemen "cutting the car with a large scissor-like tool." After firefighters told Catalina S. she had been involved in a traffic accident, she saw her son, J.P., lying on the ground. The next thing she could remember was waking up at the hospital.

Catalina S., who indicated she "does not know how to drive," stated she did not believe Andres P. had been drunk on the night of the accident. Although she had "argued with [Andres P.] several times about drinking and driving," on the evening of the accident she had not observed Andres P. consume any alcohol and she denied having

---

**4** In a later report, prepared for the adjudicatory hearing, Catalina S. indicated that, after she had put on her seatbelt, she looked back to be certain J.P. had put on his seat belt. Catalina S. stated J.P. was sitting behind Andres P. and that it was "not true that he [had gone] out of the window." In the same report, Andres P. stated J.P. had not been wearing a seat belt and had been sitting on the passenger side of the car, behind Catalina S.

4

"smelled alcohol on [Andres P.'s] person or that he appeared to be drunk." Catalina S. did not believe Andres P. was "unable to control his alcohol consumption" and indicated he only "drinks on occasion." Catalina S. stated that "if she felt [Andres P. had been] too drunk to drive . . . , she would not have allowed him to drive home." However, when Catalina S. was informed that Andres P. had been found to have had not only alcohol but cocaine in his blood, she "became enraged then cried out 'Pendejo' (fool)." Although Catalina S. had never observed Andres P. use cocaine, she had noticed that he had "lost a significant amount of weight, that he [was] easily agitated and that his sexual appetite ha[d] become very frequent and aggressive."

The social worker interviewed Catalina S.'s brother, Margarito S. Margarito S. denied having any knowledge of Andres P. abusing alcohol or having ever been arrested for charges related to alcohol, drugs or domestic violence. However, Margarito S. agreed that DCFS should intervene in the matter, "then whispered under his breath that he had spoken to [Andres P.] about his reckless ways[,] but [that Andres P.] never listene[d]."

The social worker spoke with Wendy P. and Andrea P., who, as their mother was in the hospital and their father had been taken into custody, had been placed in foster care. Both girls appeared to be "healthy and well-groomed." Both girls reported doing well in school and denied that their parents abused alcohol or used illicit drugs. Neither child was observed to have been suffering from abuse or neglect or showed symptoms "associated with a developmental, medical and/or mental health issue."

After conducting interviews with the pertinent parties and collecting relevant data, the investigating social worker concluded "the safety of the children [J.P.], Andrea and Wendy . . . [was] of concern." The social worker continued: "The substantiated original allegation of Severe Neglect of the child [J.P.] by the father Andres [P.] is evidenced by critical brain trauma the child sustained as the result of not being properly restrained during a traffic accident in which [Andres P.] was found to be [driving while] under the influence of alcohol and cocaine. Further, [there is evidence in support of] the . . . allegation of General Neglect . . . of . . . [J.P.] by the mother[,] Catalina [S., who] fail[ed]

5

to protect the child [J.P.] and allow[ed] the father to [drive] the vehicle in which the child was not restrained in the vehicle's seatbelt or a booster chair when the father was clearly under the influence of alcohol." The allegation that J.P.'s siblings, Wendy P. and Andrea P., are "at Risk" is supported by the "substantiated allegations of General and Severe Neglect of [J.P.]" As DCFS determined the safety of the children could not be ensured if they were returned to the custody of the parents, the Department "respectfully recommended that the continued detention" of the children remain in place.

At a hearing held on January 9, 2013, the juvenile court addressed counsel for the Department and asked counsel to explain why Wendy P. and Andrea P. could not, with appropriate services in place, be released to their mother. Counsel for the Department responded that the Department was concerned "with the level of neglect in this case in that[, while their eight-year-old son was in the car, the] mother allowed [Andres P.] to drive his car while under the influence, claiming that she didn't realize he was under the influence. [However,] [b]oth officers that arrived first on [the] scene said that [Andres P.] and the car smelled of alcohol. [In addition, J.P.] was not restrained in a car seat or booster seat. [¶] So not just allowing the father to drive under these conditions but allowing the car to be driven without [J.P.] being restrained leads the Department to believe that mother[, Catalina S.,] was neglectful in the situation and [was] partly responsible for the situation . . . ."

Counsel for Wendy P. and Andrea P. indicated his "clients [wished] to go home." Counsel continued: "And I believe . . . it is possible to put services in place in the situation to allow the children to be released to their mother[, Catalina S.] I think that this was a tragedy and that, whether [Catalina S.] knew [Andres P.] was drinking or not at the time, I don't believe that . . . there was blatant drunken driving . . . . [¶] And I think services can be put into place . . . to protect the children in this case. In fact, [Catalina S.] doesn't even drive. And so I don't think that there's a risk to particularly the children in this case. I think that . . . the children could be released to the mother in this situation."

6

Counsel for Catalina S. agreed with counsel for the children that, with the proper services put into place, the children could be released to her.

Counsel for Andres P. also believed that Wendy P. and Andrea P. could safely be released to their mother. Counsel indicated that Andres P. was "submitting [to] detention" that day. After recognizing that "a very tragic accident . . . occurred," counsel requested that, "if [Andres P. was] released from custody, that he have unmonitored visits with his children as long as [he was] not driving them anywhere [and] as long as [he was] testing clean."

After listening to the arguments, the juvenile court stated: "I would not call this an accident. I'll stick with [counsel's] characterization, which is [it's] just [a] plain . . . tragedy. Apparently, somebody agrees with me. [¶] Today the Court finds a prima facie case for detaining the children from their father, showing that they are persons described by . . . [section] 300[,] subdivision[s] (b) and (j). [¶] The Court finds that, pursuant to . . . [section] 319, that continuance in the home of the father is contrary to the children's welfare and that a substantial danger exists to the physical health of the children. [¶] There are no reasonable means to protect them without removing them from their father's physical custody. [¶] The Court further finds that the Department made reasonable efforts to prevent removal. There are no services available to prevent further detention from the father, but there are services available to prevent further detention from the mother."

Over the Department's objection, the juvenile court ordered that the children be released to their mother that day. The court further ordered that Catalina S. was to begin participation in "Alanon immediately," that when Andres P. was released his visits with the children were to be monitored by someone other than Catalina S. and that there was no reason for Andres P. "to be . . . at the home." With regard to Andres P.'s objection to Catalina S. not being allowed to be the monitor during his visits, the juvenile court justified its ruling by indicating that "she clearly doesn't know when he's under the influence . . . , or she's unwilling to do something about it. [So] [w]hichever one of those

7

is true, . . . that can be put in place to make sure that the kids remain safe. So if [the] father wants the kids to be home with their mom, he better abide by that." The juvenile court then set the adjudication proceedings for February 13, 2013.

At the hearing held on February 13, 2013, the juvenile court found that a preponderance of the evidence supported the allegations made pursuant to subdivisions (b) and (j) of section 300 and the court sustained the petition with regard to those subdivisions. When Andres P.'s counsel argued that the Department had failed to show that the children were at substantial risk of future harm "based on a single tragic episode of . . . alleged parental misconduct," the juvenile court responded that Andres P.'s argument showed "that the kids continue to be at . . . risk [due to his] lack of understanding that drug and alcohol use . . . and driving do not mix." Further, the juvenile court indicated it was "unreasonable to believe that, out of the blue, [Andres P.] decided to try cocaine—he had never tried it before—and this tragic incident happened within a day of that happening."

After ordering that the children remain in the physical custody of Catalina S., the juvenile court ordered that Andres P. attend "alcohol rehabilitation with random testing and individual counseling." As to the children, Wendy P. and Andrea P., the juvenile court ordered that they attend individual counseling. After then ordering the Department to work with Catalina S. "on getting an I.E.P. for [J.P.]," who was scheduled to be released from the hospital a few days after the hearing, the juvenile court set the matter for a section 364 hearing to determine, among other issues, whether its jurisdiction over the matter could at that time be terminated.

On February 22, 2013, Andres P. filed a timely notice of appeal from the juvenile court's orders.

## CONTENTIONS

Andres P. contends there is insufficient evidence to support the juvenile court's assumption of jurisdiction, removal of the children from his custody and order that all visits with his children be monitored by someone other than Catalina S.

8

**DISCUSSION**

1. *The assumption of jurisdiction.*

At a jurisdictional hearing, " 'proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor[s] [are] person[s] described by Section 300.' (§ 355.)" (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 198.) "[T]he purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of [the] children who are *at risk* of that harm." (§ 300.2, italics added.) "On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.] Substantial evidence is evidence that is reasonable, credible, and of solid value. [Citation.]" (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) In addition, in reviewing a record, an appellate court should defer to the lower court with regard to issues involving the credibility of evidence and witnesses. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734; see also *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1427 ["[W]e must defer to the [juvenile] court's factual assessments. [Citation.] '[W]e review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses.' [Citation.]"].)

Here, Andres P. argues the juvenile court improperly determined there was a substantial risk his children would suffer serious physical harm or illness as a result of his failure or inability to supervise or adequately protect them based on his neglect or abuse of J.P. during one, isolated incident. He asserts driving under the influence of alcohol on a single occasion, without more, is insufficient to warrant juvenile court jurisdiction. He contends there is no evidence he "had a substance abuse problem, no evidence the misconduct was likely to recur, and no evidence [J.P.p suffered any physical harm as a

9

result of [his, Andres P.'s,] conduct." In making this argument, Andres P. relies on the court's decision in *In re J.N.* (2010) 181 Cal.App.4th 1010.

In *In re J.N.*, the appellate court reversed the juvenile court's sustaining of a petition which alleged a single episode during which the father, while under the influence of alcohol and with his children in the car, became involved in an automobile accident. (*In re J.N., supra*, 181 Cal.App.4th at pp. 1014-1015.) The appellate court in *In re J.N.* determined there was nothing in the record to show that either parent had an ongoing substance abuse problem and, accordingly, there was no showing that the risk of such behavior would recur. (*Id.* at pp. 1022-1023, 1026.)

In the present matter, there is evidence to support the juvenile court's determination Andres P. had an *ongoing problem* with substance abuse and negligent behavior when dealing with his children, particularly when driving with them in the car. Although Andres P. asserted he did not have a problem with alcohol, there is evidence the children's mother, Catalina S., had "argued with [Andres P.] several times about drinking and driving." In addition, although Andres P. indicated he had not had an alcoholic beverage for several hours prior to driving, when tested after the accident, his blood alcohol level was .136. Similarly, Andres P. stated he had used cocaine only once, two days before the accident. However, toxicology tests indicated there was still cocaine in his system after the accident and the children's mother, Catalina S., stated Andres P. had lost a significant amount of weight, became easily agitated and that his sexual appetite had become frequent and aggressive. Then, when interviewed, Catalina S.'s brother, the children's uncle, indicated he believed DCFS should intervene in the matter. He stated he had spoken to Andres P. about his "reckless ways," but that Andres P. had not listened. Finally, Andres P. admitted that J.P. had been sitting in the back seat of the car unrestrained by either a seatbelt or "booster seat." As he claimed he did not know that individuals riding in the back seat of a vehicle were required to wear a seat belt, it is likely that Andres P. previously had been negligent in failing to make certain his children

10

were secure in seatbelts or booster seats while he was driving with them in the car.[5]  This evidence substantially supports the juvenile court's finding that, not only had J.P. suffered severe injuries as a result of Andres P.'s failure to adequately protect the child, J.P.'s sisters, Wendy and Andrea, were at risk of also suffering from such substantial, willful neglect.  Under these circumstances, the juvenile court properly assumed jurisdiction over the children pursuant to section 300, subdivisions (b) and (j).

In addition to the factual discrepancies, the holding relied on by Andres P. in *In re J.N., supra,* 181 Cal.App.4th 1010 has been discredited.  Admittedly, until recently it was the consensus that a court could not exercise dependency jurisdiction under section 300, subdivision (b) if the evidence failed to indicate a *current risk of harm*.  (*In re J.N.,* at p. 1023, citing *In re Rocco M*. (1991) 1 Cal.App.4th 814.)  In *In re Rocco M*. the court stated that "[w]hile evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances at the time of the hearing subject the

---

[5]    Andre P.'s failure to secure J.P. with a seat belt or in an appropriate car seat cannot be minimized.  In *In re Ethan C.* (2012) 54 Cal.4th 610, a father's two young surviving children were adjudged dependents of the juvenile court based on findings pursuant to section 300, subdivision (f) that the father "caused the death of another child through abuse or neglect."  In support of the findings, the court found the evidence had established that the father, in violation of the law, had transported his third child, an 18-month-old daughter, in an automobile without securing her in a child safety seat and she was fatally injured when another vehicle collided with their car.  (*In re Ethan C.,* at p. 617.)  The California Supreme Court determined assumption of jurisdiction over the surviving children was proper even though "[t]here [was] no indication [the father] was at fault for the traffic accident . . . ."  (*Id.* at p. 619.)  In addition, the Supreme Court rejected the father's contention section 300, subdivision (f) "expressly requires" a current risk of harm to the surviving children "arising from his responsibility, through abuse or neglect, for [his daughter's] death."  (*In re Ethan C.*, at p. 639.)  Although in *In re Ethan C.,* the court was interpreting subdivision (f), it also indicated that the father's "fatal misjudgment was . . . directly relevant to his ability and willingness to ensure the safety and well-being of [his deceased daughter's] young siblings . . . , who were then also in his care.  The juvenile court evidenced its belief that this was so by sustaining [an] allegation . . . , which asserted that [the father's] fatal abuse or neglect of [his daughter] demonstrated a danger of serious harm to [his surviving children pursuant to subdivision (j)]."  (*Id.* at p. 639.)

minor to the defined risk of harm" and "[t]hus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' [Citations.]" (*In re Rocco M.*, at p. 824, italics & fn. omitted.)

The reasoning of *In re Rocco M.* was soundly rejected by another division of this District Court of Appeal in *In re J.K.* (2009) 174 Cal.App.4th 1426. As the court in *In re J.K.* explained, since the court's decision in *Rocco M.*, the Legislature has altered the statutory scheme materially. (*In re J.K.*, at p. 1436.) Subdivision (b) of section 300 now allows for jurisdiction when "[t]he child has suffered, *or* there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child[.]" (Italics added.) "[T]he use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction under these subdivisions." (*Id.* at p. 1435, fn. omitted.)

Here, although at the time of the jurisdictional hearing Andres P. was still asserting he did not have a substance abuse problem, that his misconduct was not likely to recur and that J.P. suffered no physical harm as a result of his, Andres P.'s, conduct, the evidence indicated otherwise. The juvenile court's assumption of jurisdiction over Wendy P., Andrea P. and J.P. pursuant to subdivisions (b) and (j) of section 300 was supported by substantial evidence.

2. *The juvenile court's orders requiring removal and monitored visitation.*

Andres P. contends the juvenile court's orders removing the children from his physical custody and granting only visits monitored by someone other than Catalina S. must be reversed because they are not supported by substantial evidence. However, on August 29, 2013, the juvenile court issued an order placing the children back in the home with both parents.

12

"It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10; see also *City of Los Angeles v. County of Los Angeles* (1983) 147 Cal.App.3d 952, 958.) Moreover, when an appeal becomes moot, it is the duty of the appellate court to dismiss it. (*In re Ruby T.* (1986) 181 Cal.App.3d 1201, 1204.)

Here, as the juvenile court's order placing the children in the home with both parents renders Andres P.'s contentions moot, we need not address them and that portion of his appeal raising them will be dismissed.

## DISPOSITION

The juvenile court's order assuming jurisdiction over Wendy P., Andrea P. and J.P. is affirmed. That portion of Andres P.'s appeal challenging the orders removing the children from his physical custody and granting only monitored visits is dismissed as moot.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

13